Floyd **MEREDITH**, Appellant,

v.

**Robert T. GAVIN** and New Hampshire Insurance Company, Appellees.

No. 20698.

United States Court of Appeals, Eighth Circuit.

July 6, 1971.

See also, D.C., 51 F.R.D. 5.

2. B Barron & Holtzoff, Federal Practice and Procedure, § 1082 (Wright ed. 1961, 1969 Supp.).

L. R. Magee, John E. Redmond, Kansas City, Mo., for appellant.

William H. Sanders, David C. Trowbridge, Kansas City, Mo., for appellees; Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., of counsel.

Before MATTHES, Chief Judge, GIBSON, Circuit Judge, and HENLEY,* District Judge.

GIBSON, Circuit Judge.

This is an appeal by plaintiff Floyd Meredith from a judgment entered in the Western District of Missouri in favor of the defendants Robert Gavin and New Hampshire Insurance Company, following a jury verdict of no liability on a complaint based on 18 U.S.C. § 2520 of the federal wiretap laws. The plaintiff contends for a directed verdict on liability. We disagree and affirm the judgment of the District Court.

The facts of the controversy are as follows. Sometime in December 1968 or January 1969, plaintiff began to suffer from a painful hip ailment. He claimed it was from an accident suffered on his job, and made a workmen's compensation claim. The defendant New Hampshire Insurance Company (Company) was his employer's workmen's compensation insurer and defendant Gavin was the Company's claims manager. The claim came to their attention on February 3, 1969. After investigation and some attempts at compromising the claim, the Company resisted payment on the ground that plaintiff's injury did not arise from a work-connected accident. It reached this determination on the basis of a statement taken by its investigator from the plaintiff on February 4. The statement, written by the investigator but not signed by the plaintiff, read in part: "While I was loading, my left hip pulled loose or something. The leaders in my hip pulled loose or something. It happened while I was loading the pick-up. I don't know whether my foot slipped or not. I just got a catch in my left hip." On the basis of this statement, the defendant insurer claimed that plaintiff's injury was caused by the ordinary strain of lifting heavy objects and not by an accident on the job, and therefore was not compensable.

The parties communicated a number of times concerning plaintiff's claim. On February 28, 1969, plaintiff called defendant Gavin on the telephone to inquire again why his claim wasn't being paid. Gavin switched on his dictaphone machine, without plaintiff's knowledge, to record the conversation. In the course of the conversation, defendant Gavin read the statement to the plaintiff and asked him if he had made that statement to the investigator. Plaintiff allegedly answered yes. Gavin claims that he recorded the conversation because he is a "one-man claims department" for the insurance company, he handles approximately 700 claims per month, and it is necessary to keep accurate records of all conversations with claimants in order to know exactly what commitments have been made.

Thereafter, the defendant made certain medical and compensation payments to plaintiff. In May 1969, plaintiff filed a workmen's compensation claim, which was heard in January 1970. The Company contended there was no compensable injury. The plaintiff testified that he had suffered his injury when his foot slipped on some debris on the floor. He denied making the statement to the investigator, denied ever seeing the statement, and denied that the defendant Gavin had read the statement to him over the phone and that he had acknowledged making it. However, he admitted talking to the defendant on the phone.

Defendant Gavin then testified over plaintiff's objection to the substance of the conversation, stating that he read the statement to plaintiff and plaintiff acknowledged making it. Following this testimony, defendant's attorney disclosed the unconsented recording made by par-

* Chief Judge, United States District Court, Eastern District of Arkansas, sitting by designation.

ticipant Gavin and said: "I would like to say this: It will take about fifteen minutes to play the belt. I have not gone into this extensively but I have a dictaphone here and if you want to listen to the entire thing, it is available." The dictaphone belt was not offered into evidence or played at the hearing. The workmen's compensation referee entered an award in favor of plaintiff of 15 per cent of the body as a whole.

Plaintiff then instituted the instant suit, claiming that defendant's recording of the telephone conversation and its subsequent "use" at the workmen's compensation hearing violated the federal wiretap laws, 18 U.S.C. §§ 2510 et seq.[1]

The plaintiff contends that the recording of the conversation was an "interception" within the meaning of § 2510(4) and therefore it was a violation of the statute, that even if the interception wasn't a violation of the Act, its subsequent use and disclosure was, and therefore he is entitled to a directed verdict as to liability and minimum damages of $1000 as provided by § 2520 of the statute.

While the defendants apparently admit that the recording constituted an interception within the definition of the Act, they contend that the interception was not unlawful under the provisions of § 2511(2) (d),[2] and that there was no subsequent use of the recording within the meaning of the Act which would provide a basis for liability.

Since concededly no criminal or tortious act is involved, the specific question before us is whether the conversation was intercepted "for the purpose of committing any * * * injurious act" under § 2511(2) (d). In order to answer this question, we look to the legislative history of the statute.

It is to be observed that § 2511(1) of the statute outlaws all interception, use, or disclosure of oral or wire communications. Standing by itself, this prohibition would apply to any interception, use, or disclosure by or with the consent of one of the parties to the communication, as well as by third parties. Such a provision would of course go considerably beyond existing law in this area. *See, e. g.,* United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).[3] Congress however did not intend such a result, but provided in §§ 2511(2) (c) and (d) that certain interceptions with the consent of one of the parties to the communication would not be unlawful.

As originally proposed, the statute exempted from its prohibition any interception where one of the parties to the communication consented.[4] 2 U. S. Code

---

1. The sections in question were enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351, now found in 18 U.S.C. §§ 2510 et seq. Future references to section numbers will be to those in Title 18 U.S.C. and to the above Act.

2. Section 2511(2) (d) provides as follows: "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or

for the purpose of committing any other injurious act."

3. Thus we perceive no Fourth Amendment problems in this case. Under the cases construing this amendment, plaintiff had no right to expect that the defendant Gavin would not record and possibly repeat the conversation. United States v. White, *supra*; Lopez v. United States, *supra*; United States v. DiLorenzo, 429 F.2d 216, 218 (2d Cir. 1970). Therefore, any right the plaintiff has to recover for the defendant's actions derives from the statute, not from the Fourth Amendment.

4. What are now subsections 2(c) and (d) of § 2511 was originally proposed as subsection 2(c) and read as follows: "It shall not be unlawful under this Chapter for a party to any wire or oral

Cong. & Admin. News, 90th Cong., 2d Sess. 2182 (1968). This particular provision was strongly objected to by Senator Hart, who made the following observations with respect to it:

"Section 2511(2) (c) of title III completely exempts all consensual wiretapping and eavesdropping from the provisions of the title. So long as at least one of the parties to a conversation has consented to its interception, title III is inapplicable.

"Thus, although the title contains blanket prohibitions on all 'third-party' ('nonconsensual') interception— that is, interceptions without the consent of at least one of the parties to a conversation—by private persons, and places strict controls on the use of such interception by law enforcement officers, it is totally permissive with respect to surreptitious monitoring of a conversation by a party to the conversation, even though the monitoring may be for insidious purposes such as blackmail, stealing business secrets, or other criminal or tortious acts in violation of Federal or State laws.

"The use of such outrageous practices is widespread today, and I believe they constitute a serious invasion of privacy." 2 U. S. Code Cong. & Admin. News, 90th Cong., 2d Sess. 2236 (1968).

In order to meet these objections, Senators Hart and McClellan offered an amendment to the bill, substituting for the proposed subsection 2(c), the language of what are now subsections 2(c) and (d). The proposed amendment was enacted without change. 114 Cong. Rec. 14695 (May 23, 1968). The effect of the amendment is to bring within the prohibitions of the statute any interception, use or disclosure of oral or wire communications with the consent of one of the parties where the purpose is to commit any criminal, tortious, or injurious act.

■ The plaintiff contends that the purpose of the recording was to use it for impeachment purposes in the workmen's compensation proceeding and that this constitutes an "injurious act." We do not think so. A party to a conversation may testify to that conversation. He may protect himself and his credibility by recording the entire conversation, unless his purpose is evil—that is, to commit or attempt a criminal or tortious act or injure the unsuspecting participant in some vague but illegitimate fashion. The defendants contend that the purpose of the recording was purely for record-keeping, so as to have a record of any commitments that were made, that it was not intended to be used in any subsequent proceeding and that it was not so used. This contention is not wholly correct as the disclosure of the recording at the workmen's compensation hearing constituted a type of use.

There was little if any discussion in Congress on the meaning of the term "injurious act" within the framework of the reference to the prohibition against nonconsensual wiretaps or recordings by a participant in the conversation. Some vague reference was made to a use that would cause public embarrassment.[5]

---

communication, or a person given prior authority by a party to this communication to intercept such communication." Senate Report No.1097, 90th Cong., 2d Sess. (1968), p. 12.

5. Senator Hart in speaking on the proposed substitute, which was adopted as §§ 2511(2) (c) and (d), commented:
"In the substitute that is now pending we propose to prohibit a one-party consent tap, except for law-enforcement officials, and for private persons who act in a defensive fashion. * * * Such one-party consent is also prohibited when the party acts in any way with an intent to injure the other party to the conversation in any other way. For example, the secret consensual recording may be made for the purpose of blackmailing the other party, threatening him, or *publicly embarrassing him.* * * * Nor does it prohibit such recording in other situations when the

A perfectly legitimate act may often be injurious. A judgment at law can be injurious to the losing party. A bankruptcy case can injure creditors with scant resources. The resistance to unsupported claims could be injurious to the claimant. But all parties have a right to proceed under the law and to protect their own rights. The term is extremely vague and broad and certainly Congress could not have intended to use the term in its literal context.

 We do not believe that Congress intended to include within the scope of an "injurious act" the kind of conduct in question here. It does seem that by using the term "injurious act" in conjunction with "criminal and tortious acts", it was intended to reach certain kinds of harmful conduct which might not strictly be criminal or tortious. The scope of such harmful conduct must be determined on a case-by-case basis. However, it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed.

 In the instant case, the proof in the record is more than adequate to support the jury verdict that the interception in question was not for such a purpose. Even were we to concede that the purpose of the recording was to use it for impeachment purposes, a fact which is by no means necessarily inferred from the record, this would not appear to be a violation of the Act. This use would have been to protect the defendants' position, not to positively harm the plaintiff. Surely it could not be contended that the plaintiff was free to make one statement to the defendant Gavin over the phone, and then to make

an entirely different one in the compensation proceedings, without fear of contradiction. The defendant Gavin was clearly competent to testify to the contents of the phone conversation, and we think that preserving the contents of the conversation on the recording in the circumstances of this case was not the sort of "injurious act" which the statute condemns.

 The plaintiff also complains that the trial court only instructed the jury as to unlawful interception within the meaning of the Act, but failed to instruct them as to unlawful use and disclosure, which is also a basis for liability under the statute. We have examined the court's instructions in this regard and find no error. The defendant contends that there was no use and disclosure of the recording because it was not offered into evidence nor was it played at the workmen's compensation hearing. We reject this contention because we think that bringing the attention of the hearing examiner to the existence of the recording, coupled with the remark that it would corroborate the testimony of defendant Gavin constitutes a use and disclosure of the recording. However, we do not think this actionable under the statute. The sections of the statute which make unlawful the use and disclosure of recordings, §§ 2510(1) (c) and (d), refer only to interceptions obtained in violation of the Act. Since, as held above, the interception in the case was not obtained in violation of the Act, its subsequent use and disclosure was not a violation of the Act.

Finally the plaintiff complains that the court's comments on the evidence were prejudicial. He points to no specific comments in this regard and we have thoroughly reviewed the trial court's instructions and remarks in this respect and find this contention to be without merit.

The judgment is affirmed.

---

party acts out of a legitimate desire to protect himself and his own conversations from later distortion or other un-

lawful or injurious uses by the other party." (Emphasis supplied). 114 Cong.Rec. 14694–14695 (May 23, 1968).