**UNITED STATES of America**

v.

**Charles H. ROBERTSON.**

Cr. No. 82–20018–01.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

April 28, 1983.

---

Joseph S. Cage, Jr., U.S. Atty., Billy J. Guin, Jr., Asst. U.S. Atty., Shreveport, La., for the Government.

Shalle Stephen Fine, Coral Gables, Fla., for defendant.

RULING ON MOTION FOR NEW TRIAL

VERON, District Judge.

The defendant, Charles H. Robertson, has filed a motion for new trial or to arrest judgment pursuant to Rules 33 and 34 of the Federal Rules of Criminal Procedure. The defendant's motion is made to seek relief from his conviction for conspiracy to import, possess and distribute 30,000 pounds of marijuana. Two grounds have been set forth as bases on which to grant the motion. First, the defendant contends that certain tape recordings surreptitiously made of his conversations were admitted into evidence in violation of 18 U.S.C. § 2511(2)(d). Second, the defendant contends that the trial court erred in denying his motion to quash the indictment as being duplicitous. Each of these contentions shall be considered in turn.

As to the defendant's first line of argument, the court finds it to lack merit for two reasons.[1] 18 U.S.C. § 2511(2)(d) states:

---

1. This argument was also raised by the defendant during trial in the form of a Motion to Suppress, which was denied. At that time, the court ruled that "we find that the wrongful act causing the injury is not the intercepted communication but the act of criminal conspiracy itself." Now that the exigencies of conducting a criminal trial are behind us, we have been afforded the opportunity to research the legal issues more exhaustively, and to reflect on the merits of the defendant's motion in a more leisurely, appellate fashion. What follows is a more deliberate explication of the reasons why the defendant's motion must once again be denied.

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

■ Initially, it must be noted that this section applies only to those "*not* acting under color of state law." (emphasis added). In a case like the one at bar however, where a civilian serves as an informant for a criminal prosecution by consensually taping conversations with the defendant, the informant is acting "under color of state law." *U.S. v. Shields,* 675 F.2d 1152, 1157 (11th Cir.1982); *U.S. v. Mendoza,* 574 F.2d 1373, 1377 (5th Cir.), *cert. denied* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *U.S. v. Ransom,* 515 F.2d 885, 889 (5th Cir. 1975), *cert. denied,* 424 U.S. 944, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *U.S. v. Craig,* 573 F.2d 455, 476 (7th Cir.1977); *U.S. v. Rich,* 518 F.2d 980, 985 (8th Cir.1975).

■ Secondly, it is the defendant's contention, assuming *arguendo* that this subsection was applicable in this case, which it is not, that the use of the tape recording by the prosecution constituted an "injurious act" as set forth in the final clause of section (2)(d). Such a tortured reading of the statutory language simply cannot be maintained. In construing the meaning of "injurious act" within the context of section (2)(d), the Eighth Circuit Court of Appeals has noted that:

A perfectly legitimate act may often be injurious. A judgment at law can be injurious to the losing party. A bankruptcy case can injure creditors with scant resources. The resistance to unsupported claims could be injurious to the claimant. But all parties have a right to proceed under the law and to protect their own rights. The term is extremely vague and broad and certainly Congress could not have intended to use the term in its literal context.

*Meredith v. Gavin,* 446 F.2d 794, 799 (8th Cir.1971). See also *U.S. v. Phillips,* 540 F.2d 319, 324 (8th Cir.1976).

When section (2)(c) is considered along with this court's previously stated conclusion that the tapes in question were made under color of state law, the difficulty with the defendant's proposed statutory construction becomes readily apparent. Section (2)(c) states:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

■ It is clear from a comparison of sections (2)(c) and (d), that (c) rather than (d) is the appropriate section to employ in this case. Section (2)(c) is the more specific of the two sections and snuggly fits the facts before the court. To read the term "injurious" with the breadth which the defendant proposes would require the court to overlook the obvious limitations mentioned regarding the applicability of section (2)(d) and to overlook section (2)(c) altogether.[2]

2. The court's analyses regarding the applicability of § (2)(d) appears to be consistent with the available history of that legislation. As the sponsor of the bill, Senator Gary Hart noted:

\* \* \* [W]henever a private person acts in such situations with an unlawful motive, he will violate the criminal provisions of title III and will also be subject to a civil suit. Such one-party consent is also prohibited when the party acts in any way with an intent to injure the other party to the conversation in any

other way. For example the secret consensual recording may be made for the purpose of blackmailing the other party, threatening him, or publicly embarrassing him. The provision would not, however, prohibit such activity when the party records information of criminal activity by the other party with the purpose of taking such information to the police as evidence. Nor does it prohibit such recording in other situations when the party acts out of legitimate desire to protect him-

Turning to the defendant's second line of argument, he contends that it was error for the court to deny his motion to quash the indictment as duplicitous. That is, the defendant contends that the prosecution in fact alleged two conspiracies in each count of the two count indictment. The ambiguity stems from unexpected difficulties which arose when the M/V Surprise was sent to Colombia to pick up a shipment of marijuana. Colombian officials seized the Surprise. Therefore, an alternative means of transporting the contraband had to be found. The defendant contends that the first conspiracy was aborted with the seizure of the Surprise, and that a second, distinct conspiracy was instituted to ensure the safe importation of the marijuana.

Smuggling operations often experience unexpected complications without disturbing the continuity of conspiratorial organization. In *U.S. v. Watson,* 669 F.2d 1374 (11th Cir.1982), several defendants flew their aircraft to a deserted airstrip in Colombia to rendez-vous with co-conspirators and to take possession of a load of marijuana. The defendants landed on the wrong airstrip and their plane became stuck in deep mud. While the defendants were attempting to free their plane, a Colombian aircraft appeared and bombed the defendants' plane. The defendants suffered other mishaps and finally returned to the mainland to await the arrival of a different shipment of marijuana. The Court of Appeals held that only one conspiracy existed, stating that "[t]he factors we examine to determine whether there is one overall conspiracy are 'the existence of a common goal, the nature of the scheme, and an overlapping of participants in the various dealings.' [*United States v.*] *Becker,* 569 F.2d [951] at 960 [5th Cir.]." *Id.,* at 1379, 80.

Similarly, in *U.S. v. Capo,* 693 F.2d 1330 (11th Cir.1982), a boatload of marijuana was supposed to be imported into Florida from Colombia. Unforeseen difficulties arose and last minute arrangements caused a shipment of Jamaican marijuana to be substituted for the cargo originally sought. The Court held that:

> A single conspiracy is not divisible simply because of personnel changes, (citations omitted), it does not become divisible because of the changes in plan by which, after the Colombian shipment aborted, a Jamaican cargo was substituted. *Id.* at 1334.

As in *Watson, supra,* this court places great weight on the common goals, the nature of the schemes to import and the overlapping personnel in the allegedly bifurcated conspiracy. In the instant case, the goals were admittedly identical; to import marijuana. The nature of the two schemes was also similar; importation by boat. Also, the personnel involved remained the same in both attempts to import marijuana. There is no doubt in the court's mind that the behavior in question in this case constituted one continuous conspiracy. The boat's crew and their mission had unerring uniformity of purpose notwithstanding an inconvenient change of vehicles.

It would seem ironic if the defendant's motion was granted. For to do so would hinder the authorities of both Colombia and the United States in their efforts to curb the drug smuggling trade, and to make the existing business as difficult and risky to carry out as possible.

For the foregoing reasons therefore, it is hereby adjudged that the defendant's motion is DENIED.

self and his own conversations from later distortions or other unlawful or injurious uses by the other party.

114 Cong.Rec. 14694 (May 23, 1968).