**Sandra A. BODDIE, Plaintiff,**

v.

**AMERICAN BROADCASTING COMPANIES, INC., et al.,
Defendants.**

**No. C80–675A.**

United States District Court,
N.D. Ohio, E.D.

Aug. 30, 1988.

Richard Sternberg, Sternberg, Newman & Assoc., Akron, Ohio, for plaintiff.

Michael Brittain, Calfee, Halter & Griswold, Cleveland, Ohio, for defendants.

## MEMORANDUM OF DECISION

BATCHELDER, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. Upon a thorough review of the Motion, the numerous memoranda of the parties, and the applicable law, the Court finds that the Motion is well taken and therefore must be granted.

Plaintiff initially brought this action against the defendants seeking damages for defamation, false light, invasion of privacy, and violation of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (the Federal Wiretap Statute). Prior to trial, Judge Aldrich dismissed, *sua sponte*, plaintiff's claim under the Federal Wiretap Statute. The jury thereafter returned a verdict for the defendants on the remaining claims. Plaintiff appealed only the dismissal of her claim under the Federal Wiretap Statute and the Sixth Circuit reversed the dismissal and remanded the case for further proceedings. *Boddie v. American Broadcasting Companies, Inc.*, 731 F.2d 333 (6th Cir.1984).

Thereafter, Plaintiff filed her Third Amended Complaint which contained five counts. Counts one and two allege violations of Plaintiff's civil rights under 42 U.S.C. §§ 1985(3) and 1986. The remaining three counts allege violations of various provisions of the Federal Wiretap Statute, including 18 U.S.C. §§ 2511(1)(a), 2511(1)(b)(ii), 2511(1)(c), and 2511(1)(d).

Defendants do not dispute that they engaged in conduct which is proscribed by § 2511. However, Defendants maintain that their conduct was not unlawful because it was subject to a one party consent privilege set forth in 18 U.S.C. § 2511(2)(d).

At the time the Sixth Circuit reviewed this case, 18 U.S.C. § 2511(2)(d) provided:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for

the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

In 1986, subsequent to the Sixth Circuit's review, Congress amended § 2511(2)(d) by deleting the phrase "or for the purpose of committing any other injurious act." Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, § 101(b)(2), 100 Stat. 1848, 1850 (1986) (the Privacy Act).

The issue before this Court is whether § 2511(2)(d), as it existed when Plaintiff's cause of action accrued, or the amended version of § 2511(2)(d) should be applied in the instant case. For the reasons that follow, the Court finds that the Federal Wiretap Statute as amended by the Privacy Act must be applied in the instant case.

## THE PRIVACY ACT MERELY CLARIFIES THE MEANING OF THE UNAMENDED VERSION OF 18 U.S.C. § 2511(2)(d)

The comments of Senator Hart are the source of controversy surrounding the "other injurious act" clause of the unamended version of § 2511(2)(d).

"In the substitute that is now pending we propose to prohibit a one-party consent tap, except for law-enforcement officials, and for private persons who act in a defensive fashion. Such one-party consent is also prohibited when the party acts in any way with an intent to injure the other party to the conversation in any other way. For example, the secret consensual recording may be made for the purpose of blackmailing the other party, threatening him, or *publicly embarrassing him*.... Nor does it prohibit such recording in other situations when the party acts out of a legitimate desire to protect himself and his own conversations from later distortion or other unlawful or injurious uses by the other party." (Emphasis supplied). 114 Cong.Rec. 14694–14695 (May 23, 1968). Quoted in *Meredith v. Gavin*, 446 F.2d 794, 798–99 n. 5 (8th Cir.1971).

The above language has been relied upon by some courts to aid in interpreting the "other injurious act" clause of § 2511(2)(d). In construing that clause, the *Meredith* court stated:

There was little if any discussion in Congress on the meaning of the term "injurious act" within the framework of the reference to the prohibition against nonconsensual wiretaps or recordings by a participant in the conversation. Some vague reference was made to a use that would cause public embarrassment.

A perfectly legitimate act may often be injurious. A judgment at law can be injurious to the losing party. A bankruptcy case can injure creditors with scant resources. The resistance to unsupported claims could be injurious to the claimant. But all parties have a right to proceed under the law and to protect their own rights. The term is extremely vague and broad and certainly Congress could not have intended to use the term in its literal context.

We do not believe that Congress intended to include within the scope of an "injurious act" the kind of conduct in question here. It does seem that by using the term "injurious act" in conjunction with "criminal and tortious acts", it was intended to reach certain kinds of harmful conduct which might not strictly be criminal or tortious. The scope of such harmful conduct must be determined on a case-by-case basis. However, it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the nonconsenting party in some harmful way and in a manner in which the offending party had no right to proceed.

*Meredith, supra* at 798–99.

While *Meredith* did not arise in a First Amendment context, it was a prelude to the subsequent Congressional Amendment of § 2511(2)(d) in two respects. First, *Meredith* points out that there was little if any discussion in Congress relative to the meaning of the term "other injurious act." *Meredith, supra* at 798. This lack of dis-

cussion is conspicuous by virtue of its absence from the legislative history of the Federal Wiretap Statute. Moreover, what little direction is given, and from which the controversy in the instant case arises, is contained in one vague reference to public embarrassment. *Id.*

Second, *Meredith* points out that "[t]he term ["injurious act"] is extremely vague and broad and certainly Congress could not have intended to use the term in its literal context." *Meredith supra* at 799. The *Meredith* court went on to conclude that the scope of the harmful conduct, the injurious act, must be determined on a case-by-case basis and includes those situations where the party intercepting the conversation intends to use it in "some harmful way *and in a manner in which the offending party had no right to proceed.*" *Id.* (emphasis added).

The instant case, unlike *Meredith*, is not merely a case between two private parties. Rather, the defendants in this case are "media" defendants whose "right to proceed" is bottomed on the First Amendment. Thus, this case contains serious First Amendment implications not found in *Meredith* arising from the attempt to curtail and punish the efforts of these defendants to gather and disseminate the news.

In light of these concerns, lack of Congressional guidance, vagueness, and ambiguity of the phrase "other injurious act", and the chilling effect of these on First Amendment rights, Congress chose to clarify § 2511(2)(d) by removing that phrase. The Reports of both The House of Representatives, H.R.Rep. No. 647, 99th Cong. 2d Sess. at 39–40, (1986), and the Senate, S.Rep. No. 541, 99th Cong.2d Sess. at 17–18 (1986), U.S.Code Cong. & Admin.News 1986, p. 3555, clearly indicate that numerous court decisions have "construed and misconstrued" the term "other injurious purposes." This result, Congress recognizes, was caused by the imprecision with which § 2511(2)(d) was originally drafted.

> Under current federal law it is permissible for one party to consent to the interception and recording of a conversation. This exception to the general prohibition on interception, however, contains an exception relating to persons who intercept or record communications for illegal, tortious or other injurious purposes. This exception was added in 1968 by the late Senator Hart in an effort to prevent one party from intercepting or recording a conversation for blackmail or similar improper purposes. Unfortunately, that floor amendment was not drafted with precision. As a result, numerous court cases have arisen wherein the term "other injurious purposes" has been construed and misconstrued. Most troubling of these cases have been attempts by parties to chill the exercise of First Amendment rights through the use of civil remedies under this chapter.

H.R.Rep. No. 99–647, 99th Cong.2d Sess. at 39.

Moreover, Congress clearly indicated its great concern, where, as here, courts have expanded the term "improper purpose" to permit a cause of action where the recording of a conversation was for the improper purpose of embarrassing the nonconsenting party.

> In numerous court cases the term "other injurious purposes" has been misconstrued. Most troubling of these cases have been attempts by parties to chill the exercise of First Amendment rights through the use of civil remedies under this chapter. For example, in *Boddie v. American Broadcasting Co.*, 731 F.2d 333 (6th Cir.1984), the plaintiff, whose conversations were recorded by a journalist, sued. Despite the consent of the reporter who was a party to the conversation, the plaintiff claimed that the recording of the conversation was illegal because it was done for an improper purpose, to embarrass her. While the appeals court decision in *Boddie* merely sent the case back for further factual development, it is clear from the facts of the case that the term "improper purpose" is overly broad and vague. The court's opinion suggests that if the network intended to cause "insult and injury" to plaintiff Boddie, she might be entitled to recover. This interpretation of the statute places a stumbling block in

**1308**

the path of even the most scrupulous journalist. Many news stories have been brought to light by recording a conversation with the consent of only one of the parties involved—often the journalist himself. The present wording of Section 2511(2)(d) not only provides such a person with a right to bring suit, but it also makes the actions of the journalist a potential criminal offense under Section 2511, even if the interception was made in the ordinary course of responsible news-gathering activities and not for the purpose of committing a criminal act or a tort. Such a threat is inconsistent with the guarantees of the First Amendment. Inasmuch as Chapter 119 as amended by the Electronic Communications Privacy Act continues to prohibit interceptions made for the purpose of committing either a crime or a tort (including defamation), the public will be afforded ample protection against improper or unscrupulous interception. S.Rep. No. 99–541, 99th Cong.2d Sess. at 17 (1986), U.S.Code Cong. & Admin.News 1986, p. 3571.

■ In light of the foregoing, the Court finds that § 2511(2)(d) as amended by the Privacy Act ought to be applied in the instant case. The sparse legislative history of the Federal Wiretap Statute in no way points to a different result. Moreover, the lone reference to "public embarrassment" by Senator Hart did not address the specific issues raised by this case. A review of the cases construing the unamended version of § 2511(2)(d) indicates that those courts that considered the propriety of the "other injurious act" phrase had not come to the same conclusions. This Court's view is strengthened by the finding in the legislative history that "... numerous court cases have arisen wherein the term 'other injurious purposes' has been *construed and misconstrued.*" H.R. Rep. No. 99–647, 99th Cong.2d Sess. at 39 (emphasis added).

■ Finally, the legislative history of § 101(b)(2) of the Privacy Act clearly indicates that the intent of Congress was not to change the law by deleting the "other injurious act" phrase from § 2511(2)(d). Rather, the intent of Congress was to clarify the confusion arising out of the imprecise language of § 2511(2)(d) and the vague reference in the legislative history of the Federal Wiretap Statute relative to public embarrassment.

The statute thus presents the journalist with a hard choice: to get the news may expose him or her to a criminal conviction and/or civil liability. And whether a journalist is convicted in fact may turn, under *Boddie,* on how a jury sitting years later assesses the journalist's subjective intent. The Committee finds such a threat to be inconsistent with the guarantees of the First Amendment. Inasmuch as the amended statute continues to prohibit interceptions made for the purpose of committing either a crime or a tort (including acts of defamation), the Committee believes that the public will be afforded ample protection against improper or unscrupulous interception. The amendment is intended to remove only the shadow of a finding that Section 2511 had been violated by interceptions made in the course of otherwise responsible newsgathering. While the appeals court decision merely sent the case back for further factual development, it is clear from the facts of the case that the term "improper purpose" is overly broad and vague. The deletion of the terms leaves in place the exception to one party consent for illegal or tortious interceptions or recordation. Thus, the original purpose of the Hart amendment is preserved without maintenance of the litigation-breeding phrase. This amendment is supported by the Department of Justice.

H.R.Rep. No. 99–647, 99th Cong.2d Sess. at 40 (1986).

Thus, while it is true that "... the views of subsequent Congresses cannot override the *unmistakable intent* of the enacting one ... such views are entitled to significant weight, ... and particularly so when the precise intent of the enacting Congress is obscure." *Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100

S.Ct. 800, 813, 63 L.Ed.2d 36 (1980) (emphasis added, citations omitted).

■ For all the above reasons, the Court finds that § 101(b)(2) of the Privacy Act merely clarified the Congressional intent underlying the unamended version of § 2511(2)(d); that Congress never intended, at least in cases involving media defendants and giving rise to First Amendment considerations, to provide a cause of action for conduct relative to the gathering and disseminating of news which does not rise to the level of a crime or a tort; and that § 2511(2)(d) as amended by the Privacy Act is applicable to the instant case. As a result, Counts III, IV, and V of Plaintiff's Third Amended Complaint are hereby dismissed.

### 42 U.S.C. §§ 1985(3) and 1986

Counts One and Two of Plaintiff's Third Amended Complaint purport to allege violations of 42 U.S.C. §§ 1985(3) and 1986. Whether a complaint states a cause of action under § 1985(3) is measured by the following criteria:

> To come within the legislation a complaint must allege that the defendants did (1) conspire or go in disguise on the highway or on the premises of another (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of [the] conspiracy, whereby another was (4a) injured in his person of property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

In the instant case, Plaintiff alleges that: It was their purpose to deprive the Plaintiff Boddie of the equal protection, privileges, rights and immunities to which a citizen of the United States is entitled under federal law, including but not limited to those provisions of Title 18,

U.S.C., Sections 2510 through 2520, which grant to all citizens, regardless of race, the right to be free from the unlawful interception of one's oral communication, its use and disclosure, under circumstances justifying the expectation that such oral communication would not be intercepted, used or disclosed.
Plaintiff's Third Amended Complaint, ¶ 10.

Thus, Plaintiff's § 1985(3) claim is dependent upon the success of Counts Three, Four, and Five of her Third Amended Complaint. Since this Court has already determined that Plaintiff has failed to state a claim under the Federal Wiretap Statute her cause of action under § 1985(3) must also fail.

■ Moreover, Plaintiff's § 1985(3) claim is also defective in at least one other significant respect. Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates. *Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Similarly, for Plaintiff to succeed under the Federal Wiretap Statute, she must establish that Defendants were not entitled to the shelter provided by the one party consent privilege contained in § 2511(2)(d). As stated, it is not disputed that Defendants engaged in the conduct complained of in Plaintiff's Third Amended Complaint or that Defendants were parties to and/or consented to the interception of the communication at issue herein. Thus, the one party consent privilege of § 2511(2)(d) is available to these defendants unless Plaintiff can establish that the communication was "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or the laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

In the instant case, Plaintiff does not allege that the Defendants perpetrated any crime. Moreover, at the conclusion of the trial of this case the jury returned a verdict for the Defendants on all of Plaintiff's common law tort claims. As a result,

Plaintiff can succeed under the Federal Wiretap Statute only if she can establish a violation of § 1985(3). In short, Plaintiff's § 1985(3) claim is dependent upon her claim under the Federal Wiretap Statute, which is dependent upon her claim under § 1985(3). Under the facts of this case and its procedural history, there is no independent basis for either claim. Thus, Plaintiff's § 1985(3) claim once again must fail.

■ Finally, § 1986 was designed to punish those who aid and abet violations of § 1985. Without a violation of § 1985 there can be no violation of § 1986. *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir.1980); *Hahn v. Sargent*, 523 F.2d 461 (1st Cir.1975). Therefore, Plaintiff's § 1986 claim must also be dismissed.

In light of the foregoing, the Court finds that Plaintiff's Third Amended Complaint must be and hereby is dismissed with prejudice.

IT IS SO ORDERED.