Bernardo **VAZQUEZ–SANTOS**, Plaintiff,

v.

**EL MUNDO BROADCASTING CORPORATION; Luis Francisco Ojeda, et al., Defendants.**

No. CIV.01–2219.

United States District Court, D. Puerto Rico.

Aug. 29, 2002.

222

Bernardo Vazquez–Santos, Guaynabo, Luis A. Pagan, Patchogue, NY, for Bernardo Vazquez–Santos, plaintiff.

Heriberto J. Burgos–Perez, Fiddler, Gonzalez & Rodriguez, San Juan, for Luis Francisco Ojeda, El Mundo Broadcasting Corp. WKAQ–FM, XYZ Insurance Co., John Doe 01CV2219, defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Bernardo Vázquez–Santos, brings the present action against Defendants, Luis Francisco Ojeda, his wife Nilda E. Salina–Mujica, their conjugal partnership, El Mundo Broadcasting Corporation ("El Mundo"), and unnamed Defendants, pursuant to the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510 et seq. (1994) ("Federal Wiretap Statute"). *Docket Document No. 42.* Defendants El Mundo and Ojeda move to dismiss the complaint. *Docket Document Nos. 24, 25, 40.* As required by Fed.R.Civ.P. 12(b)(6), we must accept the allegations of the complaint as true for purposes of the following analysis.

### I.

### *Factual and Procedural Synopsis*

Unless indicated otherwise, we derive the following factual summary from the amended complaint, *Docket Document No. 42.*

Plaintiff is a resident of Guaynabo, Puerto Rico. He is an attorney, but he is not currently engaged in the practice of law. Plaintiff was the legal counsel to Pedro Rosselló, former Governor of Puerto Rico.

Defendant Ojeda is a resident of Guaynabo. He is a journalist and radio personality of renown in Puerto Rico. Defendant Ojeda is not an employee of Defendant El Mundo. Defendant Salinas–Mujica is the wife of Defendant Ojeda.

Defendant El Mundo is a corporation authorized to do business in Puerto Rico. Defendant El Mundo owns and operates two radio stations in Puerto Rico, WKAQ in San Juan, and WUKQ in Ponce.

On the afternoon of May 8, 2000, Defendant Ojeda called Plaintiff at his office in La Fortaleza, the Governor's mansion. Defendant Ojeda informed Plaintiff's secretary that he was calling "from the newsroom at WKAQ." When Plaintiff came on the line, Defendant Ojeda identified himself to Plaintiff.

Defendant Ojeda asked Plaintiff whether the fax machine at his office, which is paid for with public funds, was used to send invitations to a political fundraiser. *See Docket Document No. 24.* Defendants Ojeda and El Mundo intercepted and recorded the conversation. Defendant Ojeda did not warn Plaintiff that he was being recorded, nor did Defendant Ojeda obtain consent from Plaintiff to tape the telephone call. Plaintiff did not suspect that he was being recorded, nor did he think that Defendant Ojeda was conducting the interview in preparation for a future radio broadcast or for any other public purpose.

A few hours later, Defendant El Mundo broadcasted an edited portion of the interview during its regular news program on WKAQ and on its affiliated radio stations throughout Puerto Rico. Defendants edited the recording to include only the excerpts that were most damaging to Plaintiff. The radio commentator announced that Plaintiff might have committed a crime and invited listeners to tune in for a broadcast of the entire interview later that evening. Defendant El Mundo did not verify the information obtained by Defendant Ojeda.

Later that evening, Defendant El Mundo aired a more complete version of the interview between Plaintiff and Defendant Ojeda. The interview was broadcast during the "Ojeda Sin Límite" program on WKAQ and on its affiliated stations. Plaintiff was not informed about these two broadcasts, nor did he consent to the disclosure of his conversation with Defendant Ojeda.

Defendant Ojeda encouraged members of the public to call Plaintiff's office at La Fortaleza, presumably to complain about his alleged misconduct. Plaintiff received

at least one highly insulting telephone call at his office that evening, and the caller threatened to file a complaint against Plaintiff for violating the ethical standards of his profession.

The Federal Communications Commission ("FCC") conducted an investigation of these events. The FCC entered a forfeiture order in the amount of $4,000 against Defendant El Mundo for its violation of federal regulations.

Defendants' conduct has caused Plaintiff to suffer public humiliation, professional and financial difficulties, anguish, and pain.

Plaintiff filed his original complaint on September 14, 2001. *Docket Document No. 1.*

On or about October 10, 2001, after Plaintiff had filed his complaint, Defendant Ojeda commented about the lawsuit during his radio program and characterized Plaintiff as a person solely motivated by greed. Plaintiff claims that Defendant Ojeda disparaged his character in an attempt to sway public opinion in favor of the radio personality and to intimidate Plaintiff and potential jurors.

Approximately two weeks later, Defendant Ojeda discussed the federal indictments against another public official, Edison Misla Aldarondo, in his radio program. In the context of this discussion, Defendant Ojeda implied that similar indictments would be handed down to aides who had worked for former Governor Rosselló, liked to file lawsuits, and were involved in stealing. Although he was not mentioned by name, Plaintiff claims that Defendant Ojeda was referring to him.

On December 17, 2001, Defendants El Mundo and Ojeda moved to dismiss the complaint for failure to state a claim upon which relief can be granted. *Docket Document Nos. 24, 25.* Defendants argue that Plaintiff has failed to state a claim under the Federal Wiretap Statute. Defendants aver that it is not unlawful for a person to intercept a communication where the person is a party to the communication or where one of the parties has consented to the interception, unless the interception is for the purpose of committing a criminal or tortious act. According to Defendants, Plaintiff's allegations fail to show that the communication was intercepted for the purpose of committing a criminal or tortious act. Defendants aver that Plaintiff's conclusory contention that they acted with tortious and criminal intent is insufficient, since he lacks facts to support that assertion. Defendants asseverate that the telephone call was recorded for lawful newsgathering purposes.

Plaintiff filed an amended complaint on January 17, 2002. *Docket Document No. 42.* Plaintiff alleges that this court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (1993), 18 U.S.C. § 2511, and 18 U.S.C. § 2520. Plaintiff brings related state-law claims against Defendants. Plaintiff maintains that Defendants violated numerous provisions, listed *infra,* of the Puerto Rico Criminal Code, Puerto Rico Civil Code, Puerto Rico Constitution, and United States Constitution.

On March 22, 2002, Plaintiff filed an opposition to Defendants' Rule 12(b)(6) motion. *Docket Document No. 48.* Plaintiff contends that the amended complaint is sufficient to support his federal and state claims. *Id.* Plaintiff asseverates that Defendants intercepted the telephone communication with the purpose of committing criminal and tortious acts. *Id.* Plaintiff argues that this court should not dismiss the complaint because discovery is required to establish Defendants' purpose in intercepting the communication and broadcasting the interview. *Id.* According to Plaintiff, the issue of Defendants' purpose in intercepting the telephone call is a question of fact for the jury. *Id.*

Plaintiff relies on *Branzburg v. Hayes,* 408 U.S. 665, 691, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), for the proposition that the press does not enjoy a First Amendment privilege to violate criminal laws. *Id.* Plaintiff avers that Defendant Ojeda's "irregular, ill-willed, bad faith, deviant, malicious and premeditated actions" demonstrate that he was not motivated by legitimate news-gathering purposes. *Id.*

Plaintiff asseverates that Defendants Ojeda and El Mundo had a legal obligation to inform him that they wanted to record the conversation and to obtain his consent before doing so. *Id.* Plaintiff submits that Defendants' violation of FCC regulations constitutes evidence of their criminal and tortious intent. *Id.*

Furthermore, Plaintiff argues that 18 U.S.C. § 2511(2)(d) only applies to the interception of a communication, and does not include disclosure or use of information obtained from an interception. *Id.* Plaintiff contends that it is not necessary for a plaintiff to demonstrate a criminal or tortious purpose where a defendant discloses and uses information obtained from an interception. *Id.* Plaintiff avers that the interception of a communication for purposes of public disclosure and use is in itself an unlawful and tortious purpose. *Id.*

On May 6, 2002, Defendant El Mundo filed a reply. *Docket Document No. 54.* Defendant El Mundo avers that the amended complaint still fails to state a cognizable claim under federal or state law. *Id.* According to Defendant El Mundo, there are no well-pleaded facts from which it can be inferred that the company recorded the conversation with the purpose of committing a criminal or tortious act. *Id.* Defendant El Mundo maintains that the issue of Defendants' purpose in intercepting and recording the communication is not a question for the jury. *Id.* Defendant El Mundo contends that Plaintiff has simply set forth conclusory state-ments repeating statutory language or opinions of counsel, but has not alleged sufficient facts to support his claims. *Id.* Defendant El Mundo submits that the subsequent broadcast of the communication was not a criminal or tortious act if the interception itself was not illegal. *Id.*

On June 24, 2002, Plaintiff filed a surreply. *Docket Document No. 59.* Plaintiff contends that it was appropriate for him to make minimal use of government facilities for political purposes. *Id.*

## II.

### *Motion to Dismiss Standard*

Under Rule 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "we take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in his favor." *See Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992). "We must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Acadia Motors, Inc. v. Ford Motor Co.,* 44 F.3d 1050, 1055 (1st Cir.1995).

## III.

### *Analysis*

#### A. *The Federal Wiretap Statute and Freedom of the Press*

Defendants aver that their actions are protected by the First Amendment and are not actionable under federal law. *Docket Document No. 24.* Defendants asseverate that since the recorded and disseminated information was truthful and newsworthy, the broadcast of the interview did not violate the Federal Wiretap Stat-

ute. *Id.* Plaintiff retorts that the press does not enjoy a First Amendment privilege to violate the law. *Docket Document No. 48.*

The Federal Wiretap Statute prohibits the interception and disclosure of wire, oral, or electronic communications, subject to certain exceptions.[1] 18 U.S.C. § 2511(1). One of the primary purposes of the statute is to protect the privacy of wire and oral communications. *Bartnicki v. Vopper,* 532 U.S. 514, 523, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001). A person whose communication has been intercepted or disclosed may bring a civil action to recover (1) equitable relief; (2) actual or statutory damages; (3) punitive damages; and (4) litigation costs and attorneys' fees. *See* 18 U.S.C. § 2520(a); *see also Williams v. Poulos,* 11 F.3d 271, 274 n. 5 (1st Cir.1993). "[T]he legality of an interception is determined by the purpose for which the interception is made." *United States v. Underhill,* 813 F.2d 105, 110 (6th Cir.1987). The statutory scheme includes the following exception:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id.* § 2511(2)(d). The requisite consent may be given by either party to the communication, and it is not necessary that the other party agree to the interception. *Gilday v. Dubois,* 124 F.3d 277, 296 (1st Cir. 1997).

Under the previous version of the statute, it was unlawful to intercept a communication for the purpose of committing a criminal or tortious act, "or for the purpose of committing any other injurious act." 18 U.S.C. § 2511(2)(d) (amended 1986). Pursuant to the Electronic Communications Privacy Act of 1986, Congress amended the statute to delete the phrase, "or for the purpose of committing any other injurious act." S. REP. NO. 99–541 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3571. Congress noted that the statute had been misconstrued by numerous courts, and it specifically cited the case of *Boddie v. Am. Broad. Cos.,* 731 F.2d 333 (6th Cir.1984). *Id.*

In *Boddie,* the Sixth Circuit observed that Congress had not defined the term "injurious act." *Id.* at 338. The court quoted the legislative history of the statute, in which one senator had explained that section 2511(2)(d) prohibits interception of a communication " 'for the purpose of blackmailing the other party, threatening him, or publicly embarrassing him.' " *Id.* (internal citation omitted). The plaintiff complained that reporters had recorded a conversation between herself and them "to cause the Plaintiff insult and injury." *Id.* The court apparently concluded that this purpose might constitute an "injurious act" within the meaning of the statute, and remanded the case to the district court for further proceedings. *Id.*

---

1. The statute reads: "Except as otherwise specifically provided in this chapter any person who-(a) intentionally intercepts ... or procures any other person to intercept ... any wire, oral, or electronic communication" is subject to fines, imprisonment, or lawsuits. 18 U.S.C. § 2511(1)(a). The statute also prohibits persons from "intentionally disclos[ing] ... to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." *Id.* § 2511(1)(c).

Congress noted that the Sixth Circuit's interpretation of the term "injurious act" "places a stumbling block in the path of even the most scrupulous journalist." S. REP. NO. 99–541. The Congressional report further states:

Many news stories have been brought to light by recording a conversation with the consent of only one of the parties involved-often the journalist himself. Many news stories are embarrassing to someone. The present wording of section 2511(2)(d) not only provides such a person with a right to bring suit, but it also makes the actions of the journalist a potential criminal offense under section 2511, even if the interception was made in the ordinary course of responsible news-gathering activities and not for the purpose of committing a criminal act or a tort. Such a threat is inconsistent with the first amendment. Inasmuch as chapter 119 as amended by the Electronic Communications Privacy Act continues to prohibit interceptions made for the purpose of committing either a crime or a tort (including defamation), the public will be afforded ample protection against improper or unscrupulous interception.

*Id.*

Defendants rely on *Sussman v. Am. Broad. Cos.*, 971 F.Supp. 432 (C.D.Ca. 1997). In that case, the court ruled that "where a journalist is party to a conversation, the recording of such a conversation for news gathering purposes is not criminal or tortious conduct within the meaning of the statute." *Id.* at 435. The court found that Congress had specifically amended the statute in 1986 to protect journalists from incurring civil liability for recording conversations to which it was a party. *Id.* The court concluded that Congress had been concerned that the imposition of civil liability on journalists for re-

cording their conversations with others would have serious First Amendment implications. *Id.*

However, upon review, the Ninth Circuit disagreed with the lower court's construction of the statute. The Ninth Circuit opined: "If the district court interpreted section 2511 as containing a blanket exemption for journalists, we cannot agree. Congress could have drafted the statute so as to exempt all journalists from its coverage, but did not. Instead, it treated journalists just like any other party who tapes conversations surreptitiously." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir.1999). The court observed that a news gathering organization could very well commit a criminal or tortious act in the process of intercepting a communication to gather information about a newsworthy event. *See id.*

Defendants also cite to *Boddie v. Am. Broad. Cos.*, 694 F.Supp. 1304 (N.D.Ohio 1988). In that case, the court discussed the 1986 amendment of the statute to delete the "other injurious act" phrase. *Id.* at 1307. The court found that Congress removed the disputed phrase because the term was ambiguous and because Congress was troubled about the First Amendment implications of that phrase. *Id.* The court further examined the legislative history of the amendment:

The statute thus presents the journalist with a hard choice: to get the news may expose him or her to a criminal conviction and/or civil liability. And whether a journalist is convicted in fact may turn, under *Boddie*, on how a jury sitting years later assesses the journalist's subjective intent. The Committee finds such a threat to be inconsistent with the guarantees of the First Amendment. Inasmuch as the amended statute continues to prohibit interceptions made for the purpose of committing either a crime or a tort (including acts of defa-

mation), the Committee believes that the public will be afforded ample protection against improper or unscrupulous interception. The amendment is intended to remove only the shadow of a finding that Section 2511 had been violated by interceptions made in the course of otherwise responsible newsgathering.

*Id.* at 1308 (quoting H.R. REP. NO. 99–647 (1986)). The court concluded that "Congress never intended, at least in cases involving media defendants and giving rise to First Amendment considerations, to provide a cause of action for conduct relative to the gathering and disseminating of news which does not rise to the level of a crime or a tort." *Boddie,* 694 F.Supp. at 1309.

■ This court concludes that journalists are subject to the provisions of the Federal Wiretap Statute to the same extent as parties that are not affiliated with the media.[2] *See Peavy v. WFAA–TV, Inc.,* 221 F.3d 158, 184 (5th Cir.2000); *Sussman,* 186 F.3d at 1202. Congress amended the statute to protect journalists engaged in responsible news-gathering that does not involve the commission of a crime or tort. Journalists who intercept a communication for criminal or tortious purposes are not exempt from liability under the Federal Wiretap Statute simply because the criminal or tortious conduct took place in the context of a media investigation.

## B. *Purpose of Committing Any Criminal or Tortious Act*

Defendant El Mundo argues that there are no well-pleaded facts from which it can be inferred that the telephone conversation between Plaintiff and Defendant Ojeda was recorded with the purpose of committing a tortious or criminal act. *Docket Document No. 54.* Plaintiff asseverates that the interception of a communication for purposes of public disclosure is itself an unlawful and tortious purpose. *Docket Document No. 42.* Furthermore, Plaintiff alleges that Defendants recorded the telephone call with the purpose of committing multiple crimes and torts in violation of various constitutional and statutory provisions. *Id.*

Under the Federal Wiretap Statute, a plaintiff must demonstrate that the defendants acted with the purpose of committing a criminal or tortious act other than the recording of the communication itself. *See Boddie,* 731 F.2d at 339; *Betancourt v. Nippy, Inc.,* 137 F.Supp.2d 27, 32 n. 5 (D.P.R.2001).

Plaintiff avers that 18 U.S.C. § 2511(2)(d) only pertains to the interception of a communication, and does not apply to disclosure or use of information obtained from an interception. *Docket Document No. 48.* Plaintiff contends that it is not necessary for him to demonstrate a criminal or tortious purpose where a defendant discloses and uses information obtained from an interception. *Id.* Defendant El Mundo argues that the subsequent broadcast of a communication is not a criminal or tortious act if the interception itself was not illegal. *Docket Document No. 54.*

■ Although section 2511(2)(d) speaks only of interception, not of disclosure or

---

**2.** It would be frivolous to assert-and no one does in these cases-that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws. Although stealing documents or private wiretapping could provide newsworthy informa-tion, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news.
*Bartnicki,* 532 U.S. at 532 n. 19, 121 S.Ct. 1753 (quoting *Branzburg v. Hayes,* 408 U.S. 665, 691, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)).

use, of a communication, a disclosure or use of the contents of any intercepted communication is only unlawful if the person knows or has reason to know that the interception was illegal. *See* 18 U.S.C. § 2511(1)(c)-(d). Where a party to the communication intercepts the communication or gives consent to such interception, the recording is unlawful only if it is done with a criminal or tortious purpose. *Id.* § 2511(2)(d). " 'The purpose of the use and disclosure proscriptions is to reinforce the interception proscription by 'denying the wrongdoer the fruits of his conduct,' and by eliminating the demand for those fruits by third parties." *Peavy,* 221 F.3d at 191. If the interception itself was not unlawful, then the subsequent use or disclosure of intercepted information is not unlawful. *Betancourt,* 137 F.Supp.2d at 31–32. The lawfulness of Defendants' use and disclosure of information gained through the interception hinges on whether they intercepted the communication for the purpose of committing a criminal or tortious act.

Plaintiff alleges that Defendants intercepted the communication for a criminal or tortious purpose, in violation of the following provisions: (1) Article 118 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4101 (1983) (libel); (2) Article 144 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4185 (1983 & Supp. I 1998) (interception of private verbal communication); (3) Article 145 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4186 (1983 & Supp. I 1998) (recording of communications); (4) Article 146 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4187 (1983 & Supp. I 1998) (disclosure of private communication); (5) Article 147 of the Puerto Rico Criminal

Code, 33 L.P.R.A. § 4188 (1983 & Supp. I 1998) (publication of private communication); (6) Article 148 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4189 (1983 & Supp. I 1998) (alteration of messages); (7) Article 149 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4190 (1983) (improper use of private communication); (8) Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 (1991) (obligation when damage caused by fault or negligence); (9) Article II, Section 1 of the Puerto Rico Constitution, P.R. CONST. art. II, § 1,[3] (human dignity and equality; discrimination prohibited); (10) Article II, Section 4 of the Puerto Rico Constitution, P.R. CONST. art. II, § 4 (freedom of speech and press; peaceful assembly; petition for redress of grievances); (11) Article II, Section 8 of the Puerto Rico Constitution, P.R. CONST. art. II, § 8 (protection against attacks on honor, reputation, and private life); (12) Article II, Section 10 of the Puerto Rico Constitution, P.R. CONST. art. II, § 10 (searches and seizures; wire-tapping; warrants); and (13) the First Amendment of the United States Constitution, U.S. CONST. amend. I. *Docket Document No. 42.*

▆ This court is aware that even though the Puerto Rico Constitution and Criminal Code prohibit wiretapping, *see* P.R. CONST. art II, § 10; 33 L.P.R.A. §§ 4185–4186, the Federal Wiretap Statute trumps inconsistent state law. *See United States v. Bennett,* 538 F.Supp. 1045, 1047–48 (D.P.R.1982); *United States v. Ortiz Perez,* 465 F.Supp. 1284, 1286 (D.P.R.1979); *see also Camacho v. Autoridad de Telefonos de P.R.,* 868 F.2d 482, 487 (1st Cir.1989) (Federal Wiretap Stat-

---

**3.** "The provisions of the Puerto Rico Constitution are said to operate *ex proprio vigore,* without the need for an effectuating statute comparable to § 1983." *Robles–Vazquez v. Tirado Garcia,* 110 F.3d 204, 207 (1st Cir.

1997). For example, "[t]he rights safeguarded by [P.R. CONST. art. II, §§ 1, 8] operate, *ex proprio vigore,* to make violators amenable to tort-damage awards." *Rivera–Flores v. P.R. Tel. Co.,* 64 F.3d 742, 751 (1st Cir.1995).

ute applies in Puerto Rico to the same extent as in the fifty states). Since the Federal Wiretap Statute requires Plaintiff to demonstrate that Defendants operated with a purpose to commit a tortious or criminal act other than the interception itself, *see Boddie*, 731 F.2d at 339; *Betancourt*, 137 F.Supp.2d at 32 n. 5, the mere fact that Defendants violated provisions in the Puerto Rico Constitution and Criminal Code which bar wiretapping does not establish a criminal or tortious purpose within the meaning of the federal statute.

■ Nevertheless, we find that Plaintiff's amended complaint does state a claim upon which relief can be granted. Plaintiff has alleged that Defendants intended to commit various crimes and torts other than the interception itself, and, at this early stage in the proceedings, we cannot ascertain Defendants' purpose in recording the telephone conversation. *See Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1305 (4th Cir.1983) (defendants' purpose in intercepting and broadcasting the communication clearly presents a genuine issue of material fact for the jury); *Benford v. Am. Broad. Cos.*, 502 F.Supp. 1159, 1162–63 (D.Md.1980) (same). "Dismissal is appropriate only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Acadia Motors*, 44 F.3d at 1059. That is not the case here.

### IV.

### *Conclusion*

In accordance with the foregoing, this court DENIES Defendants' motion to dismiss the complaint. *Docket Document Nos. 24, 25, 40.*

**IT IS SO ORDERED.**