09-3685-cv
Caro v. Weintraub

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: April 19, 2010          Decided: August 13, 2010)

Docket No. 09-3685-cv

MARSHALL CARO,

*Plaintiff-Appellant,*

–v.–

ERIC WEINTRAUB, DAVID H. WEINTRAUB, GLENN WILLIAM DOWD, AND DAY PITNEY LLP,

*Defendants-Appellees.*

Before:

CABRANES, WESLEY, LIVINGSTON, *Circuit Judges.*

Appeal from an order of the United States District Court for the District of Connecticut (Dorsey, *J.*), entered on August 4, 2009, dismissing appellant Marshall Caro's complaint.

AFFIRMED.

MARSHALL CARO, *pro se*, Greenwich, CT, *for Plaintiff-Appellant.*

ALLAN B. TAYLOR, Day Pitney LLP, Hartford, CT (Erik H. Beard, *on the brief*), *for Defendants-Appellees Dowd and Day Pitney LLP.*

---

WESLEY, *Circuit Judge*:

Plaintiff-Appellant Marshall Caro filed a complaint in the United States District Court for the District of Connecticut (Dorsey, *J.*) alleging, *inter alia*, a civil cause of action under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §§ 2510-21 ("Title III" or the "Wiretap Act"). The district court dismissed Caro's complaint. We affirm, and, in so doing, hold that the exception to the one-party consent provision of 18 U.S.C. § 2511(2)(d) requires that a communication be intercepted for the purpose of a tortious or criminal act that is independent of the intentional act of recording.

## I. BACKGROUND

In early February 2008, Elizabeth Caro, who was in the final days of a painful battle with lung cancer, was visited by her sons Eric and David Weintraub, along with their families, and her brother and sister-in-law Thomas and Lynn Corrigan. During the visit, Elizabeth spoke with her sister-in-law, Lynn, in the kitchen about Lynn's desire to

have Elizabeth sign a draft of a will that Thomas had prepared. The draft named Thomas as the executor of Elizabeth's estate and contained provisions to which Elizabeth allegedly objected. Elizabeth's husband, Marshall Caro — the plaintiff-appellant here — informed Lynn that he had already hired an attorney to prepare their wills and that in their meeting with their attorney, Elizabeth had expressed different intentions than those set out in Thomas's draft.

At some point during this conversation, David and Eric Weintraub entered the kitchen. David placed his iPhone on the kitchen table and, unbeknownst to Marshall, used the device to record the conversation.[1] After the recording began, Thomas also entered the kitchen. It appears from Caro's complaint that the conversation at times included Thomas Corrigan and David Weintraub and, in the end, became quite heated between those involved.

Four days later, on February 6, 2008, Elizabeth died without completing a will. Marshall filed Elizabeth's death certificate with the Connecticut Probate Court and filed a

---

[1] David used a program called "Recorder," which allowed his iPhone to operate as a recording device.

Petition for Letters of Administration for Elizabeth's estate. Eric and David Weintraub, represented by attorneys from Day Pitney LLP, filed an Opposition to Marshall Caro's petition.

The Probate Court held a hearing on April 21, 2008. David testified that he had recordings of the kitchen conversation between Marshall and Elizabeth, and his attorney submitted a CD of the recordings.[2]

On February 27, 2009, Marshall Caro filed a complaint in the United States District Court for the District of Connecticut (Dorsey, *J.*), alleging violations of Title III, along with various Connecticut state law claims.[3] In addition to David and Eric Weintraub, Caro named as defendants Day Pitney LLP and one of its lawyers, Glenn William Dowd. Upon Day Pitney's motion and over Caro's objection, the district court relieved Day Pitney from

---

[2] According to Caro's complaint, David Weintraub testified at a deposition that he "made at least three separate surreptitious recordings" of the conversation.

[3] To wit, invasion of privacy by intrusion upon seclusion, intentional spoliation of evidence, fraudulent misrepresentation to the Probate Court, negligent misrepresentation to the Probate Court, and intentional violations of the Connecticut Rules of Professional Conduct.

Connecticut's Local Civil Rule 83.13 and allowed a firm attorney to represent Day Pitney for the purpose of filing a motion to dismiss the complaint.

Defendants[4] moved to dismiss, arguing, *inter alia*, that the recorded conversations did not qualify as "oral communications" within the scope of Title III because David Weintraub was a party to the conversation and Caro had no reasonable expectation of privacy in the conversation. Caro opposed the motion, arguing that he did not reasonably expect to be recorded and that David was not a party to the conversation. He also requested leave to amend his complaint.

The district court granted the motion to dismiss and denied Caro's motion to amend his complaint. *Caro v. Weintraub*, No. 3:09 CV 00335, 2009 WL 2358919, at *1 (D. Conn. July 31, 2009). The district court agreed that the recordings were not "oral communications" under the Wiretap Act because David Weintraub was a party to the conversation and Caro did not have a reasonable expectation that his conversation was private. *Id*. at *2-3. The district court

---

[4] Eric and David Weintraub filed *pro se* motions to dismiss that adopted by reference Day Pitney's arguments.

declined to exercise supplemental jurisdiction over Caro's state law claims.  *Id*. at \*3.

Caro appealed.

**II. DISCUSSION**

We review the dismissal of a complaint *de novo*, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  To survive a motion to dismiss, the complaint must plead sufficient facts to make out a plausible claim to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When, as here, the complaint is filed by a *pro se* plaintiff, we construe the complaint liberally, interpreting it "to raise the strongest arguments that [it] *suggest[s]*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

In relevant part, the Wiretap Act affords a civil cause of action to an aggrieved individual who has had her oral communications intentionally intercepted by a party to those communications for the purpose of committing a crime or tort.  18 U.S.C. §§ 2520, 2511(1), 2511(2)(d).  We hold that

David Weintraub was a party to the conversation, but Caro did not allege a tort that could provide the independent tortious intent necessary to bring a civil claim under the Wiretap Act.  Thus, it is futile to allow him to amend his complaint.

A.   Party to the Conversation

The district court found that David Weintraub was a party to the relevant conversation, and we agree.

Caro argues that David Weintraub was not a party to the conversation because there were actually multiple conversations that occurred in the kitchen, and the participants in the conversations did not invite David to join any of them.  Limiting ourselves, as we must, to the facts pled in the complaint, we conclude that David Weintraub was a party to the conversation for purposes of the Wiretap Act.

In the context of the statute, a party to the conversation is one who takes part in the conversation. Caro offers — and we can find — no support for the proposition that one must be invited to a conversation in order to be a party to it.  Caro admits in his complaint that David Weintraub was present at the table during the

conversation in the kitchen and that David "spoke up a few times urging [Caro] to continue." Those facts are sufficient to establish that David was a party to the conversation.[5]

Concluding that David Weintraub was a party to the conversation is not fatal to Caro's claims. The Wiretap Act forbids someone who is a party to a conversation to record it, if the "oral . . . communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Invocation of this provision raises the question of what must be alleged to demonstrate tortious intent.

B. Tortious Intent

The statute requires that an oral communication be intercepted "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). The district court did not address this issue and the original complaint as filed does not allege a tortious intent behind David Weintraub's recording. Caro requested leave before the

---

[5] We view the discussion in the kitchen as one conversation, instead of a series of separate conversations as Caro contends.

district court to amend his complaint. The district court denied Caro's request, a decision that both sides agree was in error under the Federal Rules of Civil Procedure in effect at the time.[6] Caro now argues that if he were permitted to amend the complaint, he would allege that Weintraub recorded his statements with tortious intent, while Weintraub argues that the effort would be futile.

Caro's assertion that he would plead a tortious intent is simply a recitation of the missing element in his claim — an exercise insufficient to rescue the complaint from its deficiencies. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). However, we remain obligated to construe *pro se* complaints liberally. *See Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009). Because Caro, a *pro se* plaintiff, should have been afforded leave to amend his complaint, and because he contends that he will address the deficiency, there is a strong argument that we should remand the case to allow him a chance to fix the fault. *Fulton v. Goord*, 591

[6] Under the version of Federal Rule of Civil Procedure 15(a) in effect on May 28, 2009, the date of Caro's Opposition to the Motion to Dismiss, Caro had the right to amend his complaint "once as a matter of course . . . before being served with a responsive pleading." Fed. R. Civ. P. 15(a)(1) (amended 2009).

F.3d 37, 45 (2d Cir. 2009). But Weintraub's contention is well-taken — we need not remand if the re-pleading effort would be futile. *Id.*

Determining the futility of an amended pleading turns on whether Title III requires that the claimant assert that the recording occurred with a separate and independent tortious intent, or whether the necessary tortious intent can be inferred from the act of recording itself. In other words, must a plaintiff plead that the defendant had intent to use the illicit recording to commit a tort beyond the act of recording illicitly or may the defendant merely have the intent to record and that alone is sufficient? Several of our sister circuits have tackled the issue, each reaching the conclusion that, under Title III, the defendant must have the intent to use the illicit recording to commit a tort of crime beyond the act of recording itself.

In *Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1347-48 (7th Cir. 1995), a producer of the ABC show *PrimeTime Live* arranged for individuals posing as patients to enter the Desnick Eye Center and to film their encounters using concealed cameras. *PrimeTime Live* eventually aired a segment on its "undercover investigation," asserting

misconduct by Center employees.  *Id*. at 1348.  Center employees brought suit, charging in part that ABC had used an illegal wiretap under Title III.  *Id*. at 1353.

The Seventh Circuit upheld the dismissal of the employees' Wiretap Act claims, concluding that ABC did not send the "patients" into the Center in order to commit a crime, tort, or other injurious act.  *Id*.  Even if the *PrimeTime Live* episode that followed the taping was defamatory, there was no evidence that ABC sent the test patients into the Center for the purpose of defaming the Center employees.  *Id*.

In *Sussman v. American Broadcasting Cos.*, 186 F.3d 1200, 1201 (9th Cir. 1999), ABC conducted an undercover investigation of the Psychic Marketing Group using various surveillance devices; two employees of the Group brought suit.  The employees did not allege "that the tape was made for the purpose of committing some other subsequent crime or tort," but instead "argue[d] that the taping *itself* was tortious."  *Id*. at 1202.  The Ninth Circuit found that this allegation was insufficient to meet the requirements of the statute.  "Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as

blackmail, § 2511 [of Title III] applies.  Where the *purpose* is not illegal or tortious, but the means are, the victims must seek redress elsewhere."  *Id*. at 1202-03 (emphasis added); *accord Lucas v. Fox News Network, LLC*, 248 F.3d 1180, 2001 WL 100181, at *4 (11th Cir. Jan. 16, 2001) (per curiam); *Vazquez-Santos v. El Mundo Broad. Corp.*, 219 F. Supp. 2d 221, 229-30 (D.P.R. 2002).

The legislative history of the Wiretap Act is also instructive.  The Wiretap Act as initially proposed did not prohibit interception where one of the parties to the communication consented, regardless of the parties' intent. *See* S. Rep. No. 90-1097, at 2182 (1968).  Senator Philip A. Hart objected to the broad language, observing that it permitted "surreptitious monitoring of a conversation by a party to the conversation, even though the monitoring may be for insidious purposes such as blackmail, stealing business secrets, or other criminal or tortious acts in violation of Federal or State laws."  *Id*. at 2236.  Senator Hart and Senator John L. McClellan proposed an amendment to the bill that would limit the one-party consent rule to "private persons who act in a defensive fashion."  114 Cong. Rec. 14694 (1968).  This meant that interceptions by a party to

the conversation would be forbidden if they were made "with an unlawful motive," such as "blackmailing the other party, threatening him, or publicly embarrassing him." *Id*. However, a party to a criminal conversation that recorded the conversation in order to bring evidence to the police or recording "out of a legitimate desire to protect himself and his own conversations from later distortions or other unlawful or injurious uses by the other party" would be protected under the statute. *Id*. The amendment passed. *Id*. at 14695. As the Eighth Circuit so aptly observed, it is "apparent from the context in which [Title III] was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed." *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971).

There is a temporal thread that runs through the fabric of the statute and the case law. At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act. Merely intending to record the plaintiff is not enough. If, at the moment he

hits "record," the offender does not intend to use the recording for criminal or tortious purposes, there is no violation.  But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.

Intent may not be inferred simply by demonstrating that the intentional act of recording itself constituted a tort.  A simultaneous tort arising from the act of recording itself is insufficient.  Congress chose the word "purpose" for a reason.  Therefore, the offender must have as her objective a tortious or criminal result.  Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act.  But Congress limited the cause of action to instances where one party to the conversation deliberately seeks to harm the other participant through the information intercepted.

We join the courts that have considered this question, and hold that a cause of action under § 2511(2)(d) requires that the interceptor intend to commit a crime or tort

independent of the act of recording itself.  Thus, to survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording.

The only tort Caro asserts in his complaint that could plausibly provide the intent necessary to bring the recording under the Wiretap Act is invasion of privacy, a tort recognized under Connecticut common law.  *See Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 127-28 (1982).  Other circuits appear to have implicitly recognized invasion of privacy as a tort that could provide the necessary intent to bring a recording within the purview of the Wiretap Act.  *See, e.g., Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 467 n.4 (9th Cir. 1997); *Phillips v. Bell*, No. 08-1420, 2010 WL 517629, at *7 (10th Cir. Feb. 12, 2010).  But, under Connecticut law, invasion of privacy includes four distinct types of incursion that "otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff to be let alone."  *Goodrich*, 188 Conn. at 127-28 (quoting Prosser,

*Torts* (4th ed. 1971) § 117, p. 804) (quotation marks omitted).  The four categories of invasion of privacy are: "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public."  *Id*. at 128.

Caro specifically pled invasion of privacy by unreasonable intrusion upon the seclusion of another, as opposed to a general claim of invasion of privacy. Connecticut courts have interpreted this version of the tort as the intentional invasion "upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Bonanno v. Dan Perkins Chevrolet*, No. CV 99-066602, 2000 WL 192182, at *1 (Conn. Super. Ct. Feb. 4, 2000) (quoting 3 Restatement (Second) of Torts, § 652B (1977)); *accord Birge v. Med. Elec. Distribs., Inc.*, No. 075000540, 2009 WL 1959393, at *3 (Conn. Super. Ct. June 5, 2009); *Hellanbrand v. Nat'l Waste Assocs., LLC*, No. CV 075010727, 2008 WL 442136, at *4 (Conn. Super. Ct. Jan. 31, 2008).

Invasion of privacy through intrusion upon seclusion presents a problem for Caro — it is a tort that occurs through the act of interception itself. "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the . . . information outlined." Restatement (Second) of Torts § 652B cmt. b (1977).[7] Nothing more is required after the interception is made for liability to attach based on this tort. All that is required is that the tortfeasor intended to commit the act that was the basis for the invasion — as Caro alleges here, setting up the iPhone and hitting "record."

The remaining three categories of invasion of privacy cannot be accomplished simply by intercepting one's communications; the tortfeasor is required to take an affirmative step or steps beyond the recording or the nature of the tort is such that interception would not further it. *See Gleason v. Smolinski*, No. NNH CV 065005107S, 2009 WL 2506607, at *2-7 (Conn. Super. Ct. July 20, 2009) (detailing

---

[7] The Restatement (Second) of Torts is valuable to our analysis as the Connecticut Supreme Court often embraces it when confronting an invasion of privacy claim. *See, e.g., Foncello v. Amorossi*, 284 Conn. 225, 234 (2007); *Goodrich*, 188 Conn. at 128.

elements necessary to make out a cause of action under each category of invasion of privacy).

The language and history of the Wiretap Act indicate that Congress authored the exception to the one-party consent rule to prevent abuses stemming from *use* of the recording not the mere *act* of recording.[8]  Connecticut's tort of invasion of privacy by intrusion upon the seclusion of another occurs through the simple act of the recording *itself* and therefore cannot satisfy the Wiretap Act's requirement of a separate and independent tortious intent.

Based on the facts alleged in Caro's complaint, intrusion upon the seclusion of another is the only category of invasion of privacy that could have possibly transpired

---

[8] At first glance, the legislative history suggests that invasion of privacy was a tort Congress intended to reach in the Wiretap Act.  When Senator Hart proposed the amendment that forbade interception when one party to the conversation operated with tortious or criminal intent, he noted that the blanket one-party consent rule left "wide open the problem of . . . many . . . abuses of the right of privacy."  114 Cong. Rec. 14694 (1968).  However, he then went on to distinguish the injuries he wished to avoid through the amendment — "blackmailing the other party, threatening him, or publicly embarrassing him" — from "legitimate" uses like protection from "later distortions or other unlawful or injurious uses by the other party."  *Id*. It was not invasion of the right of privacy *per se* that Senator Hart wished to avoid through his proposal, but invasions and abuses that would result through use of the interception itself.

here and Caro did not tell us or the district court if he has another tort in mind. Even if Caro were granted leave to amend his complaint and given the opportunity to allege that Weintraub had the intent to invade his privacy, that intent could only apply to invasion of privacy by intrusion upon the seclusion of another, which we hold cannot serve as the basis for the statutorily required tortious intent. Thus, we need not reach the question of whether any of the other three categories of invasion of privacy could serve as a predicate to the necessary intent. We need only say here that to bring a claim under the Wiretap Act, the offender must intercept with tortious intent that relates to a tort independent from the act of recording itself, and invasion of privacy by intrusion on the seclusion of another cannot serve that purpose.

Because Caro does not allege an independent tort that could provide the basis for the tortious intent necessary to bring a claim under the Wiretap Act, allowing him leave to amend his complaint would be futile.

**Conclusion**

For the foregoing reasons, the district court's order of August 4, 2009, dismissing Caro's complaint, is hereby AFFIRMED.