NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-3287

_____

UNITED STATES OF AMERICA

v.

KIRK EADY,

Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 2-14-cr-00277-001)
District Judge: Honorable Jose L. Linares

_____

Submitted Under Third Circuit LAR 34.1(a)
April 12, 2016

Before: AMBRO, SMITH, and KRAUSE, Circuit Judges

(Opinion filed May 4, 2016)

_____

OPINION*

_____

AMBRO, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Kirk Eady appeals his conviction for one count of illegal wiretapping in violation of 18 U.S.C. § 2511(1)(a) and the sentence of 21 months' imprisonment. He makes three primary arguments: 1) Government witness Todd Saul was ineligible to testify without being qualified as an expert; 2) the jury instructions were incorrect; and 3) the computation of his advisory Sentencing Guidelines range was incorrect because it included a two-level upward adjustment for abuse of a position of trust under U.S.S.G. § 3B1.3. For the reasons that follow, we reject Eady's arguments and affirm the judgment of the District Court.[1]

In 2012, while serving as the Deputy Director of the Hudson County Correctional Center (HCCC) in Kearny, New Jersey, Eady surreptitiously recorded several phone calls between senior members of the Corrections Officers Union and the operator of the EDPDLaw.com website. Both the union members and EDPDLaw participated in processing grievances against HCCC's management, and EDPDLaw was publicly critical of management.

To record the calls, Eady used a web service known as "Evil Operator." Marketed by Tapfury, LLC, for making prank phone calls, Evil Operator allowed customers to input two target telephone numbers and initiate a call between those two people. On each target's caller ID it would appear as though the call came from the other target. The customer could then listen to the resulting conversation and record it without the targets being aware of his presence. After obtaining the union members' cell phone numbers

---

[1] That Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction to review Eady's conviction per 28 U.S.C. § 1291, and we have jurisdiction to review his sentence under 18 U.S.C. § 3742(a).

from HCCC records, Eady used Evil Operator to initiate calls between them and secretly record the resulting conversations. Eady then retaliated against the union members by changing their work schedules, placing anonymous calls to their spouses accusing them of infidelity, and registering one of them as a member of the Ku Klux Klan.

When one of the union members learned what Eady had done, he informed the FBI. It launched an investigation and Eady admitted his use of the Evil Operator service in recorded conversations with a confidential informant. Based on the evidence obtained in the investigation, Eady was indicted by a grand jury in the District of New Jersey. In preparation for trial, Todd Saul, a senior engineer at Tapfury, was asked to testify. Saul had no prior experience with Evil Operator because Tapfury had discontinued it before he joined the company. He therefore learned about the service by speaking with other Tapfury employees and reviewing the relevant source code.

At trial, Saul testified regarding the operation and interface of Evil Operator (he also authenticated records of Eady's use of the service). The Government presented excerpts from the recorded conversations as proof of Eady's use of it. At the conclusion of the trial, Eady was convicted and, as noted, sentenced to 21 months' imprisonment. This appeal followed.

Eady argues that Saul could not testify without being qualified as an expert because his testimony was based on specialized knowledge and he lacked first-hand experience concerning the Evil Operator service. We review those claims for abuse of discretion. *See United States v. Stadtmauer*, 620 F.3d 238, 260 (3d Cir. 2010). Although Federal Rule of Evidence 702 specifically authorizes expert witnesses to testify based on

3

specialized or technical knowledge, "[w]hen a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based on the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 81 (3d Cir. 2009). When testifying about his business, a lay witness's personal knowledge may include "inferences that he could draw from his perception of a business's records, or facts or data perceived by him in his corporate capacity." *United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003). While Saul's testimony is perhaps at the outer limits of permissible lay witness testimony, his knowledge was nonetheless based on business records and information that he acquired from his professional colleagues. Moreover, Saul's testimony regarding Evil Operator was essentially duplicative of Eady's recorded admissions regarding his use of the service. In these circumstances, allowing Saul to testify as a lay witness was not an abuse of discretion.

Eady challenges the District Court's instructions to the jury on three grounds: that a specific unanimity requirement should have been imparted; that the jury instructions constructively amended the indictment; and that the rule of lenity required the District Court to adopt his proposed definition of a "party" for purposes of the defense created by § 2511(2)(d).

Eady contends that the alternative bases for criminal liability provided in § 2511(1)(a) required a specific unanimity instruction to the effect that the jury had to agree on how he had violated the statute. As he failed to raise this argument in the

4

District Court, we review for plain error. To satisfy this standard, "there must be (1) error, (2) that is plain, … (3) that affects substantial rights … [and] (4) the error [must] seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Vazquez*, 271 F.3d 93, 99 (3d Cir. 2001) (en banc) (internal quotation marks omitted). Section 2511(1)(a) provides that a defendant who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" has committed a federal crime.[2] Even when the Government alleges multiple factual bases for conviction, a specific unanimity instruction is not required unless "the complexity of the case, or other factors, create[] the potential that the jury will be confused." *United States v. Beros*, 833 F.2d 455, 460 (3d Cir. 1987). There was no risk of confusion in this case because the Government presented only one theory at trial – that Eady himself intercepted the relevant phone calls – and thus a specific unanimity instruction was unnecessary.

Eady argues next that the jury instructions constructively amended the indictment by failing to include the jurisdictional limitation contained in 18 U.S.C. § 2510(1). As Eady also failed to raise this objection in the District Court, we again review for plain error. While § 2510(1) requires that a "wire communication" be sent through facilities "furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce," this jurisdictional limitation did not appear in the

---

[2] As § 2511(1)(a) requires that the defendant act "intentionally," Eady's contention that it creates a strict liability offense is incorrect.

indictment, and thus the jury instructions matched the indictment. Moreover, the Court

also instructed the jury that landline and cellular telephone calls are wire

communications. As this is unquestionably true, it was not plain error for the District

Court to omit an express discussion of the jurisdictional limitation.

Eady's third and final challenge to the jury instructions concerns the definition of

a "party" for purposes of the defense contained in § 2511(2)(d). Pursuant to

§ 2511(2)(d), the defendant may not be held criminally liable for intercepting a wire

communication if he was "a party to the communication or … one of the parties to the

communication has given prior consent to such interception." Per the jury instructions, a

"party" is a participant whose presence is known to the other parties contemporaneously

with the communication. Although his argument is not clear, Eady appears to contend

that "party" could also mean someone who *could have* participated in the

communication. As he could have spoken during the phone calls he intercepted, Eady

posits this qualified him as a party and thus the rule of lenity required the District Court

to follow this interpretation in its instructions.[3] The proper definition of a "party" is a

question of law and our review is *de novo*. *See United States v. Brown*, 740 F.3d 145,

149 n.7 (3d Cir. 2014).

Eady's argument fails because the District Court correctly stated the law and thus

the rule of lenity does not apply. As the Court reasoned, it is clear that Congress intended

---

[3] Eady also makes a confusing argument to the effect that, as he initiated the calls at issue, § 2510 either protects him from prosecution under § 2511(1)(a) or renders § 2511(2)(d) ambiguous as applied to him. Section 2510, however, is simply a list of statutory definitions and provides no support for this argument.

to require actual participation in the conversation at issue to be considered a "party."  The

Senate Report on § 2511 expressly provides this definition, *see* S. Rep. 90-1097,

*reprinted in* 1968 U.S.C.C.A.N. 2112, 2182 ("'[P]arty' would mean the person actually

participating in the communication.") (citing *United States v. Pasha*, 332 F.2d 193 (7th

Cir. 1964)), and it is also consistent with Congress's purpose of preventing "an unseen

auditor" from intercepting communications.  *Id.* at 2154.  We have also held that a

"party" is "one who takes part in the conversation."  *See In re Google Inc. Cookie*

*Placement Consumer Privacy Litigation*, 806 F.3d 125, 143 (3d Cir. 2015) (quoting *Caro*

*v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010)).  While the District Court used different

words, its instructions to the jury were consistent with Congressional intent and our

precedent; a defendant does not actually participate in a conversation unless his presence

is known to the other participants.  Section 2511 therefore contains no "grievous

ambiguity or uncertainty" as required for application of the rule of lenity, *see Muscarello*

*v. United States*, 524 U.S. 125, 139 (1998) (internal quotation marks omitted), and Eady

has failed to show any error in the jury instructions.[4]

   With regard to the Guidelines computation, Eady contends that he should not have

received a two-level upward adjustment for abuse of a position of trust pursuant to

U.S.S.G. § 3B1.3 because his position did not "contribute[] in some significant way to

facilitating the commission or concealment of the offense" as required by the first

application note to § 3B1.3.  While that application note generally requires that the

---

[4] For the same reasons, Eady's argument that the ambiguity of the term "party" renders all of § 2511 void for vagueness fails.

defendant's position play a significant role, this is not the case when the defendant uses it to "obtain … or use without authority … any means of identification," as defined in 18 U.S.C. § 1028(d)(7). U.S.S.G. § 3B1.3 n.2. Pursuant to § 1028(d)(7)(D), "a means of identification" includes any "telecommunication identifying information or access device (as defined in section 1029(e))." 18 U.S.C. § 1029(e)(11) in turn defines "telecommunication identifying information" as an "electronic serial number or any other number or signal that identifies a specific telecommunications instrument or account, or a specific communication transmitted from a telecommunications instrument." The telephone numbers that Eady obtained from HCCC records are therefore means of identification, as they identify the employees' specific telephones. Thus he is eligible for an abuse-of-trust adjustment.

\* \* \* \* \*

We conclude that the District Court did not err in allowing Saul to testify as a lay witness, in instructing the jury, or in applying the abuse-of-a-position-of-trust adjustment, and we affirm its judgment of conviction and sentence.