FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

OCT 21 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC.; PLANNED
PARENTHOOD: SHASTA-DIABLO, INC.,
DBA Planned Parenthood Northern
California; PLANNED PARENTHOOD
MAR MONTE, INC.; PLANNED
PARENTHOOD OF THE PACIFIC
SOUTHWEST; PLANNED PARENTHOOD
LOS ANGELES; PLANNED
PARENTHOOD/ORANGE AND SAN
BERNARDINO COUNTIES, INC.;
PARENTHOOD CALIFORNIA CENTRAL
COAST, INC.; PLANNED PARENTHOOD
PASADENA AND SAN GABRIEL
VALLEY, INC.; PLANNED
PARENTHOOD CENTER FOR CHOICE;
PLANNED PARENTHOOD OF THE
ROCKY MOUNTAINS; PLANNED
PARENTHOOD GULF COAST,

             Plaintiffs-Appellees,

  v.

TROY NEWMAN,

             Defendant-Appellant,

 and

CENTER FOR MEDICAL PROGRESS;
BIOMAX PROCUREMENT SERVICES,
LLC; DAVID DALEIDEN, AKA Robert
Daoud Sarkis; ALBIN RHOMBERG;

No.   20-16068

D.C. No. 3:16-cv-00236-WHO

OPINION

SANDRA SUSAN MERRITT, AKA Susan Tennenbaum; GERARDO ADRIAN LOPEZ,

Defendants,

_____

NATIONAL ABORTION FEDERATION,

Intervenor.

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD: SHASTA-DIABLO, INC., DBA Planned Parenthood Northern California; PLANNED PARENTHOOD MAR MONTE, INC.; PLANNED PARENTHOOD OF THE PACIFIC SOUTHWEST; PLANNED PARENTHOOD LOS ANGELES; PLANNED PARENTHOOD/ORANGE AND SAN BERNARDINO COUNTIES, INC.; PARENTHOOD CALIFORNIA CENTRAL COAST, INC.; PLANNED PARENTHOOD PASADENA AND SAN GABRIEL VALLEY, INC.; PLANNED PARENTHOOD CENTER FOR CHOICE; PLANNED PARENTHOOD OF THE ROCKY MOUNTAINS; PLANNED PARENTHOOD GULF COAST, | No. 20-16070<br><br>D.C. No. 3:16-cv-00236-WHO |

Plaintiffs-Appellees,

v.

CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES, LLC; DAVID DALEIDEN, AKA Robert Daoud Sarkis; GERARDO ADRIAN LOPEZ,

Defendants-Appellants,

and

TROY NEWMAN; ALBIN RHOMBERG;
SANDRA SUSAN MERRITT, AKA Susan
Tennenbaum,

Defendants,

_____

NATIONAL ABORTION FEDERATION,

Intervenor.

_____

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC.; PLANNED
PARENTHOOD: SHASTA-DIABLO, INC.,
DBA Planned Parenthood Northern
California; PLANNED PARENTHOOD
MAR MONTE, INC.; PLANNED
PARENTHOOD OF THE PACIFIC
SOUTHWEST; PLANNED PARENTHOOD
LOS ANGELES; PLANNED
PARENTHOOD/ORANGE AND SAN
BERNARDINO COUNTIES, INC.;
PARENTHOOD CALIFORNIA CENTRAL
COAST, INC.; PLANNED PARENTHOOD
PASADENA AND SAN GABRIEL
VALLEY, INC.; PLANNED
PARENTHOOD CENTER FOR CHOICE;
PLANNED PARENTHOOD OF THE
ROCKY MOUNTAINS; PLANNED
PARENTHOOD GULF COAST,

Plaintiffs-Appellees,

v.

No.   20-16773

D.C. No. 3:16-cv-00236-WHO

ALBIN RHOMBERG,

Defendant-Appellant,

 and

CENTER FOR MEDICAL PROGRESS;
BIOMAX PROCUREMENT SERVICES,
LLC; DAVID DALEIDEN, AKA Robert
Daoud Sarkis; TROY NEWMAN; SANDRA
SUSAN MERRITT, AKA Susan
Tennenbaum; GERARDO ADRIAN
LOPEZ,

Defendants,

_____

NATIONAL ABORTION FEDERATION,

Intervenor.

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD: SHASTA-DIABLO, INC., DBA Planned Parenthood Northern California; PLANNED PARENTHOOD MAR MONTE, INC.; PLANNED PARENTHOOD OF THE PACIFIC SOUTHWEST; PLANNED PARENTHOOD LOS ANGELES; PLANNED PARENTHOOD/ORANGE AND SAN BERNARDINO COUNTIES, INC.; PARENTHOOD CALIFORNIA CENTRAL COAST, INC.; PLANNED PARENTHOOD PASADENA AND SAN GABRIEL VALLEY, INC.; PLANNED PARENTHOOD CENTER FOR CHOICE; PLANNED PARENTHOOD OF THE ROCKY MOUNTAINS; PLANNED PARENTHOOD GULF COAST, | No.    20-16820

D.C. No. 3:16-cv-00236-WHO |

Plaintiffs-Appellees,

v.

SANDRA SUSAN MERRITT, AKA Susan Tennenbaum,

Defendant-Appellant,

and

CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES, LLC; DAVID DALEIDEN, AKA Robert Daoud Sarkis; TROY NEWMAN; ALBIN RHOMBERG; GERARDO ADRIAN LOPEZ,

Defendants,

_____

NATIONAL ABORTION FEDERATION,

Intervenor.

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted April 21, 2022
San Francisco, California

Before: Mary H. Murguia, Chief Judge, Ronald M. Gould, Circuit Judge, and Nancy D. Freudenthal,[*] District Judge.

Opinion by Judge Gould

_____

[*] The Honorable Nancy D. Freudenthal, United States District Judge for the District of Wyoming, sitting by designation.

# SUMMARY[**]

### Federal Wiretap Act / Damages / First Amendment

The panel affirmed in part and reversed in part the district court's judgment, after a jury trial, in favor of Planned Parenthood Federation of America, Inc., and other plaintiffs on claims of trespass, fraud, conspiracy, breach of contracts, unlawful and fraudulent business practices, violating civil RICO, and violating various federal and state wiretapping laws.

Defendants used fake driver's licenses and a false tissue procurement company as cover to infiltrate conferences that Planned Parenthood hosted or attended. Using the same strategy, defendants also arranged and attended lunch meetings with Planned Parenthood and visited Planned Parenthood health clinics. During these conferences, meetings, and visits, defendants secretly recorded Planned Parenthood staff without their consent. After secretly recording for roughly a year-and-a-half, defendants released on the internet edited videos of the secretly recorded conversations. After a jury trial, the district court entered judgment in favor of Planned Parenthood and awarded it statutory, compensatory, and punitive damages as well as limited injunctive relief.

Affirming in part, the panel held that the compensatory damages were not precluded by the First Amendment. The panel held that under *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), and *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018), facially constitutional statutes apply to everyone, including journalists. None of the laws defendants violated was aimed specifically at journalists or those holding a particular viewpoint, and the two categories of compensatory damages permitted by the district court, infiltration damages and security damages, were awarded by the jury to reimburse Planned Parenthood for losses caused by defendants' violations of generally applicable laws.

The panel reversed the jury's verdict on the claim under the Federal Wiretap Act, 18 U.S.C. § 2511(2)(d), and vacated the related statutory damages for violating this statute, which provides that a person may record a conversation in which he or she

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

is a party unless the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." At trial, Planned Parenthood argued that the criminal or tortious purpose behind defendants' recordings was to further their civil RICO enterprise with the ultimate goal of harming or destroying Planned Parenthood. The panel held that defendants' violation of civil RICO was not a sufficient criminal or tortious purpose to impose liability under § 2511(2)(d) because the criminal or tortious purpose must be independent of and separate from the purpose of the recording.

The panel addressed defendants' other grounds of appeal in a separate memorandum disposition, filed simultaneously with this opinion.

# COUNSEL

William C. Perdue (argued) and Meghan C. Martin, Arnold & Porter Kaye Scholer LLP, Washington, D.C.; Avishai D. Don, Arnold & Porter Kaye Scholer LLP, New York, New York; Steven L. Mayer, Sharon D. Mayo, Jeremy T. Kamras, and Matthew R. Diton, Arnold & Porter Kaye Scholer LLP, San Francisco, California; Rhonda R. Trotter and Oscar D. Ramallo, Arnold & Porter Kaye Scholer LLP, Los Angeles, California; Amy L. Bomse, Rogers Joseph O'Donnell, San Francisco, California; Helene T. Krassnoff, Planned Parenthood Federation of America, Washington, D.C.; Beth Parker, Parker Law & Mediation, Inverness, California; for Plaintiffs-Appellees.

Heather Hacker (argued), Austin, Texas; Erik M. Zimmerman (argued), Edward L. White III, John A. Monaghan, and Christina A. Stierhoff, American Center for Law & Justice; Ann Arbor, Michigan; Catherine W. Short (argued), Life Legal Defense Foundation, Ojai, California; Michael Millen, Law Offices of Michael Millen, Los Gatos, California; Vladimir F. Kozina, Mayall Hurley PC, Stockton, California; Charles S. LiMandri, Paul M. Jonna, Jeffrey M. Trissell, and Milan L. Brandon II, Freedom of Conscience Defense Fund, Rancho Santa Fe, California; Thomas Brejcha, Peter Breen, and Matthew Heffron, Thomas More Society, Chicago, Illinois; Harmeet K. Dhillon and Mark P. Meuser, Dhillon Law Group Inc., San Francisco, California; Nicolaie Cocis, Law Office of Nic Cocis & Associates, Murrieta, California; Horatio G. Mihet, Liberty Counsel, Orlando, Florida; for Defendants-Appellants.

Krysten L. Connon, Licheten & Liss-Riordan PC, Boston, Massachusetts; Susan J. Frietsche, Women's Law Project, Western Pennsylvania Office, Pittsburgh, Pennsylvania; Christine Castro, Women's Law Project, Philadelphia, Pennsylvania; for Amici Curiae Feminist Majority Foundation, Physicians for Reproductive Health, and Abortion Care Network.

Erwin Chemerinsky, University of California, Berkeley, School of Law, Berkeley, California, for Amici Curiae Constitutional Law Professors Khiara Bridges, June Carbone, Martha Field, Michele Goodwin, Lisa Ikemoto, Kevin Johnson, Sylvia Law, Burt Neuborne, and Dorothy Roberts.

Kimberly A. Parker, Emily L. Stark, and Aleksandr Sverdlik, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for Amici Curiae California Medical Association and American Medical Association.

Mark Poe and Samuel Song, Gaw Poe LLP, San Francisco, California, for Amici Curiae Journalism Scholars and Journalists.

Matthew J. Geragos, Geragos Law Group, Los Angeles, California for Amicus Curiae Former Orange County, California District Attorney Anthony Rackauckas.

Paul J. Orfanedes and Meredith L. Di Liberto, Judicial Watch Inc., Washington, D.C., for Amicus Curiae Judicial Watch Inc.

Benjamin Barr, Barr & Klein PLLC, Chicago, Illinois; Stephen Klein, Barr & Klein PLLC, Washington, D.C.; for Amici Curiae Project Veritas and Project Veritas Action Fund.

Catherine G. Foster, Steven H. Aden, Katie Glenn, and Natalie Hejran, Americans United for Life, Washington, D.C., for Amicus Curiae Americans United for Life.

Kristine L. Brown, Denver, Colorado, for Amicus Curiae Live Action.

Justin F. Marceau, University of Denver, Sturm College of Law, Denver, Colorado; Christopher O. Murray and Julian R. Ellis, Jr., Brownstein Hyatt Farber Schreck LLP, Denver, Colorado; for Amici Curiae Free Speech Scholars and Animal-Advocacy Organizations.

Drew C. Ensign, Deputy Solicitor General; Brunn W. Roysden III, Solicitor General; Robert J. Makar, Assistant Attorney General; Mark Brnovich, Attorney General; Joseph A. Kanefield, Chief Deputy & Chief of Staff; Office of the Attorney General, Phoenix, Arizona; Steve Marshall, Attorney General, Montgomery, Alabama; Leslie Rutledge, Attorney General, Little Rock, Arkansas; Christopher Carr, Attorney General, Atlanta, Georgia; Lawrence G. Wasden, Attorney General, Boise, Idaho; Todd Rokita, Attorney General, Indianapolis, Indiana; Derek Schmidt, Attorney General, Topeka, Kansas; Daniel Cameron, Attorney General, Frankfort, Kentucky; Jeff Landry, Attorney General, Baton Rouge, Louisiana; Lynn Fitch, Attorney General, Jackson, Mississippi; Eric Schmitt, Attorney General, Jefferson City, Missouri; Austin Knudsen, Attorney General, Helena, Montana; Douglas Peterson, Attorney General, Lincoln, Nebraska; Dave Yost, Attorney General, Columbus, Ohio; Mike Hunter, Attorney General, Oklahoma City, Oklahoma; Alan Wilson, Attorney General, Columbia, South Carolina; Jason Ravnsborg, Attorney General, Pierre, South Dakota; Ken Paxton, Attorney General, Austin, Texas; Sean Reyes, Attorney General, Salt Lake City, Utah; Patrick Morrisey, Attorney General, Charleston, West Virginia; for Amici Curiae Attorneys General of Arizona, Alabama, Arkansas, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, and West Virginia.

GOULD, Circuit Judge:

Defendants-Appellants ("Appellants") used fake driver's licenses and a false tissue procurement company as cover to infiltrate conferences that Plaintiffs-Appellees ("Planned Parenthood") hosted or attended. Using the same strategy, Appellants also arranged and attended lunch meetings with Planned Parenthood staff and visited Planned Parenthood health clinics. During these conferences, meetings, and visits, Appellants secretly recorded Planned Parenthood staff without their consent. After secretly recording for roughly a year-and-a-half, Appellants released on the internet edited videos of the secretly recorded conversations. Planned Parenthood sued Appellants for monetary damages and injunctive relief. After pre-trial motions and a six-week trial, Appellants were found guilty of trespass, fraud, conspiracy, breach of contracts, unlawful and fraudulent business practices, violating civil RICO, and violating various federal and state wiretapping laws. Planned Parenthood was awarded statutory, compensatory, and punitive damages as well as limited injunctive relief.

Appellants argue that the compensatory damages awarded against them are precluded by the First Amendment and that Planned Parenthood did not show that

1

Appellants violated the Federal Wiretap Act.[1] We have jurisdiction under 28 U.S.C. § 1291. We affirm the awards of compensatory and punitive damages, but we reverse the jury's verdict on the Federal Wiretap Act claim and vacate the related statutory damages for violating the Federal Wiretap Act.

## I.     BACKGROUND

In 2013, David Daleiden, a long-time pro-life activist, started the Human Capital Project ("HCP").    Daleiden is well-known in pro-choice circles, and his name was on "no access" lists of individuals barred from entering Planned Parenthood conferences and affiliated health centers.[2] Daleiden partnered with two other long-time pro-life activists, Troy Newman and Albin Rhomberg, to start HCP.  Newman operated Operation Rescue, which maintains a website that publicizes the names, photographs, and personal information of abortion providers. Rhomberg has worked on pro-life projects for more than four decades, including projects that publicize the names of abortion providers in several countries.

In February and March of 2013, Daleiden circulated a proposal to Newman and Rhomberg outlining an undercover operation to infiltrate organizations, especially Planned Parenthood and its affiliates, involved in producing or

---

[1] In a separate memorandum disposition, filed simultaneously with this opinion, we address Appellants' other grounds of appeal.

[2] In this Opinion, we use the term "pro-life" to describe Appellants because Appellants refer to themselves using this term.  Likewise, we use the term "pro-choice" to describe Appellees because Appellees use that term.

2

procuring fetal tissue and to expose alleged wrongdoing through the release of "gotcha" undercover videos. In March 2013, Daleiden, Newman, and Rhomberg formed the Center for Medical Progress ("CMP") to oversee their operation; Daleiden was the CEO, Newman the Secretary, and Rhomberg the CFO. To carry out their operation, Daleiden created a fake tissue procurement company, BioMax.[3] Daleiden filed BioMax's articles of incorporation with the State of California in October 2013, signing the fictitious name "Susan Tennenbaum." BioMax had a website, business cards, and promotional materials, but was not in fact involved in any business activity. Daleiden used the false name "Robert Sarkis" while posing as BioMax's Procurement Manager and Vice President of Operations.

Daleiden then recruited additional associates to participate in the scheme. Susan Merritt, another long-time pro-life activist who had previously participated in an undercover operation targeting abortion providers, posed as BioMax's CEO "Susan Tennenbaum." Brianna Baxter, using the alias "Brianna Allen," posed as

---

[3] Tissue procurement companies obtain human tissue samples, including fetal tissue from abortion providers, and provide them to medical researchers. Fetal tissue donation to medical researchers is legal under federal law. Federal law permits "reasonable payments associated with the transportation, implantation, processing, preservation, quality control, or storage of human fetal tissue." 42 U.S.C. § 289g-2(e)(3).

BioMax's part-time procurement technician. Adrian Lopez used his own name and posed as a BioMax procurement technician.

To further the subterfuge, Daleiden created or procured fake driver's licenses for himself, Merrit, and Baxter. Daleiden modified his expired California driver's license, typing "Robert Daoud Sarkis" over his true name. Using the internet, he paid for a service to produce fake driver's licenses for "Susan Tennenbaum" (Merritt) and "Brianna Allen" (Baxter). Daleiden also had bank cards issued for the aliases Sarkis and Tennenbaum.

To establish their credentials, BioMax "employees" attended several entry-level conferences. In June 2013, "Robert Sarkis" attended the International Society of Stem Cell Research Annual Meeting in Boston. In September of that same year, "Susan Tennenbaum" and "Brianna Allen" attended the Association of Reproductive Health Professionals conference in Colorado as representatives of BioMax. Contacts from this meeting vouched for BioMax's *bona fides*, permitting BioMax to register as an exhibitor at the National Abortion Federation ("NAF") 2014 Annual Meeting. Planned Parenthood Federation of America ("PPFA") is a member of NAF, as are many of PPFA's affiliates, providers, and staff.

Daleiden, using Merritt's alias "Susan Tennenbaum," signed Exhibitor Agreements for the 2014 NAF conference on behalf of BioMax. Daleiden, Merritt, and Baxter all attended NAF's 2014 Annual Meeting in San Francisco on behalf of

4

BioMax, presenting their fake California driver's licenses at check-in and posing as Sarkis, Tennenbaum, and Allen. All signed confidentiality agreements, that among other things, prohibited them from recording. However, they covertly recorded during the entire conference.

For over a year, Appellants Daleiden, Merritt, and Baxter (using their false names) and Lopez (using his real name), on behalf of BioMax, attended the 2015 NAF Annual Meeting and three Planned Parenthood conferences held in Florida and Washington, D.C. At these conferences, Appellants often signed additional exhibitor or confidentiality agreements and secretly recorded persons with whom they spoke.

Daleiden also repeatedly sought a meeting with Dr. Deborah Nucatola, to whom he had introduced himself at the 2014 NAF Annual Meeting; Dr. Nucatola was then the Senior Director of Medical Services at PPFA and an abortion provider in California. She eventually agreed to meet, and Daleiden and Merritt secretly recorded Dr. Nucatola throughout a two-hour lunch. Daleiden and Merritt repeated this same strategy with Dr. Mary Gatter, the Medical Director of Planned Parenthood Pasadena and San Gabriel Valley, Inc.: during a lunch meeting solicited by Daleiden, Daleiden and Merritt recorded Dr. Gatter without her knowledge.

Daleiden and Merritt also used their conference contacts to secure visits to Planned Parenthood clinics in Texas and Colorado. At both, they posed as Sarkis and Tennenbaum and wore hidden cameras that recorded the entire time.

On July 14, 2015, CMP started releasing videos that included footage from the conferences, lunches, and clinic visits Appellants had secretly recorded. Appellants portray themselves as journalists reporting important and newsworthy information, whereas Planned Parenthood argues that Appellants purposefully conducted a smear campaign using illegal methods.

In response to the release of the videos, the recorded individuals testified that they received a variety of threats. Planned Parenthood provided temporary bodyguards to several of the recorded individuals and even relocated one of the recorded individuals and her family. Planned Parenthood also hired security consultants to investigate Appellants' infiltration and enhance the security of its conferences.

Planned Parenthood timely brought a civil action against Appellants in January 2016 seeking compensatory, statutory, and punitive damages for claims including violation of civil RICO, federal wiretapping law, state wiretapping laws, civil conspiracy, breach of contracts, trespass, and fraud. Planned Parenthood also sought injunctive relief prohibiting Appellants from carrying out similar future infiltrations.

After a six-week trial, the jury found for Planned Parenthood on all counts. The jury awarded Planned Parenthood compensatory and punitive damages, and the district court later awarded nominal and statutory damages, resulting in a total damages award of $2,425,084.

The compensatory damages were divided into two categories: infiltration damages and security damages. The infiltration damages, totaling $366,873, related to Planned Parenthood's costs to prevent a future similar intrusion. They included costs for assessing Planned Parenthood's current security measures and exploring potential upgrades, reviewing and upgrading Planned Parenthood's vetting of visitors and attendees at conferences, monitoring social media for potential threats, hiring additional security guards for Planned Parenthood's conferences, and improving the badging and identification systems at the conferences. The security damages, totaling $101,048, related to Planned Parenthood's costs for protecting their doctors and staff from further targeting by Appellants and from foreseeable violence and harassment by third parties. The security damages included costs for physical security and online threat monitoring for the individuals recorded in the videos that Appellants released.

The district court also awarded Planned Parenthood limited injunctive relief against all Appellants except Lopez. On August 19, 2020, the district court denied

Appellants' motion for judgment as a matter of law, a new trial, and to amend the judgment. Appellants timely appealed.

## II. STANDARD OF REVIEW

We review constitutional challenges *de novo*. *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 971 (9th Cir. 2017). "We review de novo a judgment as a matter of law." *Spencer v. Peters*, 857 F.3d 789, 797 (9th Cir. 2017). Judgment as a matter of law is appropriate when the evidence permits only one reasonable conclusion. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205–06 (9th Cir. 2008).

## III. THE FIRST AMENDMENT

"[G]enerally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991).[4] In *Cohen*, a campaign worker, Mr. Dan Cohen, provided two newspapers with information damaging to his candidate's opponent. *Id.* at 665. Cohen revealed the information on the condition that his identity as the source be kept secret. *Id.* However, the newspapers subsequently published articles revealing Cohen as the source of the damaging information, and Cohen was fired from the

---

[4] We express no view on whether Appellants' actions here were legitimate journalism or a smear campaign because even accepting Appellants' framing, the First Amendment does not prevent the award of the challenged damages.

8

campaign. *Id.* at 666. Cohen sued the newspapers seeking compensatory damages under a state promissory estoppel cause of action. *Id.* at 671. He argued that the newspapers' publication of his name was a breach of promise, which caused him to lose his job and lowered his earning capacity. *Id.* In reasoning that the First Amendment did not bar the damages, the Supreme Court explained that "[i]t is . . . beyond dispute that '[t]he publisher of a newspaper has no special immunity from the application of general laws'" and "enforcement of such general laws against the press is not subject to stricter scrutiny than would be applied to enforcement against other persons or organizations." *Id.* at 670 (quoting *Associated Press v. NLRB*, 301 U.S. 103, 132 (1937)).

We recently reiterated this holding, stating that "the First Amendment right to gather news within legal bounds does not exempt journalists from laws of general applicability." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1190 (9th Cir. 2018). In *Wasden*, we examined an Idaho statute criminalizing entry into or obtaining records of an agricultural production facility by force, threat, misrepresentation, or trespass; obtaining employment with an agricultural facility by force, threat, or misrepresentation with intent to cause harm; or entering and recording inside a non-public agricultural production facility without consent. *Id.* at 1190–91. In response to facial First Amendment challenges, we held that the provisions criminalizing entry and recording violated the First Amendment

9

because the entry provision was overbroad and the recording provision was a content-based restriction that was unable to survive strict scrutiny. *Id.* at 1194–98, 1203–05. Conversely, the provision criminalizing obtaining records did not facially violate the First Amendment because it protected the facility owners' property rights from legally cognizable harm. *See id.* at 1199–1201. The employment provision, meanwhile, complied with the First Amendment because the Supreme Court had previously held that such speech was unprotected by the First Amendment, and the provision was not aimed at suppressing a specific viewpoint. *Id.* at 1201–02 (citing *United States v. Alvarez*, 567 U.S. 709, 723 (2012)). *Wasden*, therefore, repeated that facially constitutional statutes apply to everyone, including journalists.[5]

*Wasden* was not novel within the Ninth Circuit. More than fifty years ago, we held that journalists could not use subterfuge to gain entry into a private home and secretly record an individual suspected of committing a crime. *See Dietemann v. Time, Inc.*, 449 F.2d 245, 247, 249 (9th Cir. 1971). We noted that "[t]he First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering. The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office." *Id.* at 249.

---

[5] Appellants raise no facial First Amendment challenges.

Adhering to *Cohen*, *Wasden*, and *Dietemann*, we repeat today that journalists must obey laws of general applicability. Invoking journalism and the First Amendment does not shield individuals from liability for violations of laws applicable to all members of society. None of the laws Appellants violated was aimed specifically at journalists or those holding a particular viewpoint. The two categories of compensatory damages permitted by the district court, infiltration damages and security damages, were awarded by the jury to reimburse Planned Parenthood for losses caused by Appellants' violations of generally applicable laws. As required by the Supreme Court in *Cohen*, and our court in *Wasden* and *Dietemann*, Appellants have been held to the letter of the law, just like all other members of our society. Appellants have no special license to break laws of general applicability in pursuit of a headline.

Appellants are incorrect in arguing that the infiltration and security damages awarded by the jury are impermissible publication damages. In *Hustler Magazine, Inc. v. Falwell*, the Supreme Court held that a public figure could not recover damages for emotional distress or reputational loss caused by the publication of an ad parody about him absent a showing of falsity and actual malice. 485 U.S. 46, 56 (1988). However, the facts before us are distinguishable from *Hustler Magazine*. The jury awarded damages for economic harms suffered by Planned Parenthood, not the reputational or emotional damages sought in *Hustler*

11

*Magazine*. *See id.* at 50; *see also Cohen*, 501 U.S. 663 (1991) (distinguishing between economic damages and "damages for injury to [one's] reputation or his state of mind"); *Veilleux v. NBC*, 206 F.3d 92, 127–29 (1st Cir. 2000) (same).

Further, Planned Parenthood would have been able to recover the infiltration and security damages even if Appellants had never published videos of their surreptitious recordings. Regardless of publication, it is probable that Planned Parenthood would have protected its staff who had been secretly recorded and safeguarded its conferences and clinics from future infiltrations by Appellants and third parties. Appellants' argument that, absent a showing of actual malice, all damages related to truthful publications are necessarily barred by the First Amendment cannot be squared with *Cohen*. In *Cohen*, the Supreme Court upheld an economic damage award reliant on publication—damages related to loss of earning capacity—even though the publication was truthful and made without malice. *See Cohen*, 501 U.S. at 671.

Our decision does not impose a new burden on journalists or undercover investigations using lawful means. From the beginning of their scheme, Appellants engaged in illegal conduct—including forging signatures, creating and procuring fake driver's licenses, and breaching contracts—that the jury found so objectionable as to award Planned Parenthood punitive damages. Journalism and investigative reporting have long served a critical role in our society. *See Wasden*,

12

878 F.3d at 1189. But journalism and investigative reporting do not require illegal conduct. In affirming Planned Parenthood's compensatory damages from Appellants' First Amendment challenge, we simply reaffirm the established principle that the pursuit of journalism does not give a license to break laws of general applicability.

## IV.  THE FEDERAL WIRETAP ACT

At trial, Planned Parenthood alleged that Appellants recorded Planned Parenthood's staff forty-two separate times at conferences, lunches, and health clinics without their consent in violation of the Federal Wiretap Act, 18 U.S.C. § 2511(2)(d). Planned Parenthood argued that the criminal or tortious purpose behind these recordings was to further Appellants' civil RICO enterprise with the ultimate goal of harming or destroying Planned Parenthood. Planned Parenthood also contended that Appellants' civil RICO scheme served the same purpose: harming and destroying Planned Parenthood.[6]

The jury agreed with Planned Parenthood and determined that Appellants had illegally recorded Planned Parenthood staff in all forty-two of the pled

---

[6] "To state a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the plaintiff's business or property." *Abcarian v. Levine*, 972 F.3d 1019, 1028 (9th Cir. 2020) (internal quotations and citation omitted). Planned Parenthood alleged that Daleiden's production and transfer of the three fake driver's licenses, in violation of 18 U.S.C. § 1028(a)(1) and (a)(2), served as the civil RICO predicate acts.

instances.  The jury awarded Planned Parenthood damages based on these recordings, and, pursuant to the jury's findings, the district court awarded statutory damages to various Planned Parenthood entities for these same violations.[7]

On appeal, Appellants contend that they could not have violated the Federal Wiretap Act because their violation of civil RICO is not a sufficient criminal or tortious purpose to impose liability under § 2511(2)(d).  We agree.

The Federal Wiretap Act generally prohibits any person from intentionally recording an oral communication.  18 U.S.C. § 2511(1)(a).  One exception to this broad prohibition is that a person may record a conversation in which he or she is a party unless the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  § 2511(2)(d).

A recording has a criminal or tortious purpose under § 2511(1) when "done for the purpose of facilitating some further impropriety, such as blackmail." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). This criminal or tortious purpose must be separate and independent from the act of

---

[7] The jury awarded Planned Parenthood approximately $100,000 in compensatory damages related to the Federal Wiretap Act claim, and the district court awarded statutory damages of $90,000.  Additionally, the jury awarded Planned Parenthood $870,000 in punitive damages for claims of fraud, trespass, breach of Maryland wiretapping law, and breach of federal wiretapping law.  The jury did not specify which claims the punitive damages related to.

the recording. *Id.* ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious.") (citation omitted). Put another way, the independent purpose must be "essential to the actual execution of an illegal wiretap . . . [and] directly facilitate the criminal conduct." *United States v. McTiernan*, 695 F.3d 882, 890 (9th Cir. 2012); *see also Caro v. Weintraub*, 618 F.3d 94, 99–100 (2d Cir. 2010). The recording party must also have the independent criminal or tortious purpose at the time the recording was made. *See Sussman*, 186 F.3d at 1203; *see also Caro*, 618 F.3d at 99 ("There is a temporal thread that runs through the fabric of the statute and the case law. At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act.").

With this understanding, it is clear that Appellants' violations of civil RICO could not have served as the criminal or tortious purpose required by § 2511(2)(d). Planned Parenthood alleged that the criminal or tortious purpose of Appellants' civil RICO violation was to destroy Planned Parenthood. Planned Parenthood similarly argued that the purpose of the secret recordings was to further Appellant's civil RICO scheme, which sought to destroy Planned Parenthood. However, § 2511(2)(d) requires that the criminal or tortious purpose be independent of and separate from the purpose of the recording. Planned Parenthood runs afoul of this requirement by reusing the same criminal purpose—

15

furthering the civil RICO scheme to destroy Planned Parenthood—as both the purpose of the civil RICO claim and the independent criminal or tortious purpose of § 2511(2)(d).[8] And, Planned Parenthood's argument is circular: according to Planned Parenthood, the civil RICO conspiracy is furthered by the recordings, and the recordings themselves further the ongoing civil RICO conspiracy. Such reasoning is not permitted by § 2511(2)(d). *See Sussman*, 186 F.3d at 1202.

## V. CONCLUSION

For the above reasons, we affirm the award of infiltration and security damages and the award of punitive damages. We reverse the jury's verdict on the Federal Wiretap Act claim and vacate the related statutory damages awards.[9]

**AFFIRMED IN PART, REVERSED AND VACATED IN PART.**

---

[8] Planned Parenthood briefly suggests that Appellants use of the secret recordings for fundraising can serve as an alternative independent purpose under § 2511(2)(d). However, fundraising is not a criminal or tortious purpose.

[9] Other than the statutory damages, all of Planned Parenthood's damages related to the Federal Wiretap Act are duplicative of damages affirmed in the simultaneously-filed memorandum disposition. This opinion vacates the statutory damage awards related to the Federal Wiretap Act.